THE MACCABEES *v.* WILBER.

INSURANCE—LIFE INSURANCE—BENEFICIAL ASSOCIATIONS—CHANGE OF BENEFICIARY—COMPLIANCE WITH BY-LAWS NECESSARY.

    Where the by-laws of a beneficial association provided that in order to change the beneficiary a member must make a written application and surrender his old policy, the mere oral application of a member to the record keeper

---

On effect of death of assured before contemplated change of beneficiary is complete, see notes in 34 L. R. A. (N. S.) 277.

On surrender and return of benefit certificate as condition of change of beneficiaries, see note in 1 A. L. R. 971.

of the local lodge for a blank and the tender of his policy which he was told to keep and a blank would be mailed to him but nothing further was done, *held*, insufficient to effect a change in the beneficiary.

Appeal from Lapeer; Williams (William B.), J. Submitted October 26, 1921. (Docket No. 26.) Decided December 21, 1921.

Bill of interpleader by The Maccabees against Clyde, Joseph, Irwin and Florence Wilber to determine defendants' interest in a policy of insurance. From a decree for defendants Clyde, Joseph and Irwin, defendant Florence appeals. Affirmed.

*Theo D. Halpin,* for appellant.

*B. F. Reed,* for appellees.

MOORE, J. A bill of interpleader was filed in the circuit court for the county of Lapeer, in chancery, by The Maccabees as plaintiff against Joseph Wilber, Clyde Wilber, Irwin Wilber and Florence Wilber as defendants, asking that defendants interplead and the court determine who was entitled to the proceeds of a beneficiary certificate of $1,000 held by William F. Wilber, at the time of his death, on which plaintiff conceded its liability. The court found and a decree was entered determining that Joseph Wilber, Clyde Wilber and Irwin Wilber were entitled to the fund, from which decree Florence Wilber appeals.

The learned chancellor stated the facts and the questions involved so clearly that we quote freely from his opinion as follows:

"November 29, 1902, William F. Wilber became a member of the Knights of the Modern Maccabees, a fraternal insurance association. In the certificate of membership, which will be called the insurance policy, the mother Sarah A. Wilber is named as the bene-

ficiary, and the amount of insurance was one thousand dollars. January 3, 1908, his mother having died, Mr. Wilber, by written application requested that the beneficiary be changed to his father and brothers, which was done, and on November 21, 1911, the father having died, pursuant to a like written application, his brothers, Clyde, Joseph and Irwin were made beneficiaries. Shortly before his death, William Wilber took certain steps to change the beneficiary to his wife, he having married after his brothers were made beneficiaries.

"The wife and the brothers made claim to the insurance after William Wilber's death. A bill of interpleader was filed by the insurance company, decree was filed and the fund paid into court. This controversy is now between the brothers and the widow to determine to whom the fund shall be paid, and this depends on whether William F. Wilber did all that was necessary to effect a change of beneficiary from the brothers to his wife.

"It was contended by the brothers that at the time of the transaction, which the widow claims resulted in a change of beneficiary, William F. Wilber was mentally incompetent and was unduly influenced. I find without further comment that neither of these contentions can be sustained by the evidence, and the whole controversy must turn on the effect of what was done by William F. Wilber in his attempt to make a change of beneficiary from his brothers to his wife.

"The plaintiff in this suit is 'The Maccabees' and in view of some other features of the case, I think it necessary to state why this is so. Prior to 1914, there were two fraternal insurance associations of the same general character operating largely in the same territory, and with somewhat similar names, viz. one, the Supreme Tent, Knights of the Maccabees of the World, and the other the Knights of the Modern Maccabees. In 1914, these two societies consolidated under the name of 'The Maccabees.' The new society adopted the rules of the Supreme Tent, Knights of the Maccabees of the World, took over all assets and assumed the liabilities of the old societies. The by-laws of The Maccabees pertaining to the change of beneficiary are as follows:

" 'SECTION 341.    Assignment of Certificate or Disposition ʌy Will Void.—Any transfer of a life benefit certificate or any interest therein by assignment, will, or in any manner except as hereinafter provided shall be void.

" 'SECTION 342.    Change of Beneficiary.—Any member desiring to change the beneficiary in his life benefit certificate shall surrender his old certificate, make a written request in the form provided on such certificate directing that a new certificate be issued to him payable to such beneficiary or beneficiaries as he may designate in accordance with the laws of the association, and deliver such certificate with the request for change and a fee of fifty cents to the record keeper of his tent.

" 'SECTION 343.    Issue of New Certificate.—The record keeper shall forward such certificate, the request for change, and the fee therefor to the supreme record keeper, who shall thereupon issue a new certificate to such member, bearing the same number as the one surrendered, if the request is in accordance with the laws of the association and all other conditions have been complied with.

" 'SECTION 345.    When Change of Beneficiary Takes Effect.— The change of beneficiary shall take effect upon delivering to the record keeper of a tent the life benefit certificate, or the proof of loss, if the certificate is lost, with the written request for change thereon, as provided in the laws of the association, and the fee of fifty cents.'

"In noting what was done by William F. Wilber in his attempt to change the beneficiary, it will be borne in mind that his certificate was issued by the Knights of the Modern Maccabees, and that there was no form provided on the certificate for making a request for the change of beneficiary, while there was such a form on the certificate issued by the other society and by The Maccabees.

"We will now state the facts on which the widow bases her claim that there was a change of beneficiary, or at least, that the fund equitably belongs to her.

"November 30, 1918, William F. Wilber took his policy to Imlay City to Mr. Hubbell, the record keeper of his tent, with the full intent and determination to make his wife the beneficiary in that policy to the exclusion of his brothers.    This was Saturday.    He told Mr. Hubbell he wanted the change made right away and seemed insistent about it.    Hubbell, who was postmaster, told him he had no blank application

for change of beneficiary there at the postoffice, that they were at his house, and he was so busy in the office that he could not get away and get them, that he would send them down by the mail carried Monday morning. Wilber paid him fifty cents and wanted him to take the policy, but Hubbell told him he had better take it home with him and send it back with the application. Wilber took the policy home with him at Hubbell's suggestion. He was insistent that Hubbell should keep it, but Hubbell feared it might become lost among the papers in the post office, and persuaded him to take it home with him. About 11 o'clock Monday morning, Wilber and his wife met the mail carrier at their mail box, 8 miles from Imlay City, intending to sign the application blank at once and send them back by the carrier to Mr. Hubbell to be forwarded by him, but they were informed by the carrier that Mr. Hubbell had not given the blank to him, which was the fact.

"So far as the record discloses nothing further was done by Mr. Wilber, or anyone else, to change the beneficiary, and he died suddenly the next morning. Giving full force and effect to all that was done, does it follow in view of the by-laws of the society, which were a part of the contract, between Mr. Wilber and the company that his wife became the beneficiary? The equity in favor of the widow is so overwhelmingly strong that I should be glad to be able to answer this question as she desires, but the by-laws of the society, which as I said are a part of the contract, forbid.

"It is the contention of counsel for Mrs. Wilber that as there was no form on the certificate for the request of change of beneficiary, it was impossible for Mr. Wilber to comply with section 342 in that regard, and therefore, that Wilber's failure to make any written request for a change of beneficiary was not a fatal omission on his part.

"I think this position is too technical. Wilber knew that a written request was necessary, as he had twice changed the beneficiary on this policy, and even if there was no form on the policy, section 342 provides just what the request must be, viz., that a new certificate be issued payable to such beneficiary as he

should name in accordance with the laws of the association, and it would have been easy to have expressed that request without any form being provided on the policy, and a request asking for such change must have been given effect by the society, even if it had not been in the exact form provided on the policy, if there had been such form.

"In considering what occurred between Hubbell and Wilber on Saturday, and the effect that must be given, or that was intended to be given by Wilber at the time, we must consider what Wilber would reasonably have in mind as to his expectancy of life, and not his unforeseen and unexpected sudden death. If Hubbell and Wilber on Saturday had even a suspicion that Wilber would die early Tuesday morning, there is no doubt but that the change of beneficiary would have been made with such regularity as would leave no question as to its validity. So far as the effect of any omission on the part of Hubbell is concerned, it will be borne in mind that he was not authorized to do anything in the way of making the change of beneficiary until the proper papers came to him to be forwarded to the society. Up to that time whatever he did he was acting as the agent of Wilber, and could not waive anything that the by-laws required Wilber to do. It should be noted also that Wilber did not in fact deliver the policy to Hubbell although it might be that if this were the only infirmity, it might be successfully claimed that what he did should be held under the circumstances to be a delivery. If it was not a delivery, then the attempt to change the beneficiary would fail, even if the request had been in writing, for the by-laws provide the delivery of the old policy as a condition of a change of beneficiary.

"As appears from section 341, it is the intention of the society to prevent any change of beneficiary that is not brought about in strict compliance with the provisions of the by-laws, and to make it impossible to in effect change a beneficiary by will, which has been held permissible in construing the by-laws of other fraternal insurance societies.

"There is another fact that seems conclusive to me that there was no change of beneficiary. Manifestly,

217 Mich.—3.

Mr. Wilber did not believe and never believed that what he did did make his wife his beneficiary. When he left Mr. Hubbell on Saturday he knew he was to sign a written request for a change on the blank form that Hubbell was to send him on Monday, and was to send the certificate with the request to Hubbell Monday, and he understood that before his change of beneficiary could take effect, he would be required to and be expected to deliver to Hubbell the certificate and the written request to change.

"These things would doubtless have been done on Tuesday when the blank would have been sent by Hubbell if Mr. Wilber had not died. That would have been done before if Mr. Wilber had known what was soon to befall him. The court is powerless to do for Mr. Wilber what he would have done if he had lived a few days longer, or known he would die so soon. It follows therefore, there was no change of beneficiary, and the fund, less the costs of the plaintiff, be paid to the brothers named in the certificate, but without costs."

The attorney for the appellant recognizes the rule of law relating to a change of beneficiary in a policy issued by a corporation like the plaintiff, as stated in the case of the *Ancient Order of Gleaners* v. *Bury,* 165 Mich. 1 (34 L. R. A. [N. S.] 277), but insists there are certain exceptions to the rule there stated, and that the instant case comes within one of those exceptions which was stated in the case of the *Supreme Conclave, Royal Adelphia,* v. *Cappella,* 41 Fed. 1, as follows:

"If the insured has pursued the course pointed out by the laws of the association, and has done all in his power to change the beneficiary, but before the new certificate is actually issued, he dies, a court of equity will decree that to be done which ought to be done, and act as though the certificate had been issued."

Counsel says this case was cited with approval by this court in *Supreme Court, I. O. F.,* v. *Frise,* 183 Mich. 186. He also cites *Taylor* v. *Grand Lodge, A.*

O. U. W. (N. D.), 178 N. W. 130; *Thomas* v. *Insurance Ass'n* (Iowa), 183 N. W. 628, and other cases. An examination of each of these authorities will show some distinguishing characteristic from the case before us.

We have no doubt Mr. Wilber fully intended to make Mrs. Wilber his beneficiary, and it is to be regretted that he did not give effect to his intention in some such manner as was indicated in the opinion of the judge who tried the case. See *Ancient Order of Gleaners* v. *Bury, supra.*

The decree is affirmed.

STEERE, C. J., and WIEST, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.