DOGARIU v. DOGARIU.
SAME v. UNION MUTUAL LIFE INS. CO.
SAME v. UNITED STATES FIDELITY & GUARANTY CO.

1. INSURANCE—CHANGE OF BENEFICIARY—DEATH-BED WILL.

Death-bed will of insured, made after receiving injuries in an automobile accident from which he died a few hours later, dividing proceeds of life insurance policies between widow and his son by a previous marriage, did not effect change of beneficiary where the change had not been approved by an officer of the insurer or indorsed on the policies by the company as required by the policies.

2. SAME—CHANGE OF BENEFICIARY—POLICY—WILLS.

Contracts of life insurance or laws of the insuring society providing method for designation or change of beneficiaries which do not include the right to change the direction by will binds the insured and he cannot designate a beneficiary by will.

3. SAME—PRESCRIBED METHOD OF CHANGING BENEFICIARIES—SUBSTANTIAL COMPLIANCE.

Where the policy of life insurance provides the method and procedure for changing the designated beneficiary, there must be at least substantial compliance with such provisions to effect the change.

4. SAME—CHANGE OF BENEFICIARY—SUBSTANTIAL COMPLIANCE—LOST POLICY.

A court will recognize a change of beneficiary under a life insurance policy where the insured has substantially complied with the policy's requirement and completion is prevented by reason of the policy's being lost, mislaid or unobtainable.

5. SAME—CHANGE OF BENEFICIARY—WILLS—VESTED RIGHTS OF BENEFICIARY.

Death-bed will which attempted to give insured's son one half the proceeds of his life insurance policies without designating him as a beneficiary failed to change beneficiary since will

became effective only upon death of testator at which instant the widow, as beneficiary, became vested with the right to the insurance.

6. SAME—STIPULATIONS—INTERPLEADER—VESTED RIGHT OF BENE-FICIARY.

Payment of proceeds of life insurance policies into court in pursuance of stipulations and decrees of interpleader would not affect claim of widow as beneficiary since her right thereto became absolute upon the death of her husband and could not be affected by any subsequent act of the insurer.

Appeal from Wayne; Moynihan (Joseph A.), J. Submitted June 10, 1943. (Docket No. 59, Calendar No. 42,373.) Decided September 7, 1943.

Separate actions in assumpsit by Anna Dogariu against Union Mutual Life Insurance Company and United States Fidelity & Guaranty Company on insurance policies.

Bill by Joseph Dogariu against all parties in the above actions at law to enjoin collection or payment of the proceeds of the policies which were the subject of the above actions at law and to award one half of the proceeds of the policies to plaintiff. Cross bills by the defendant insurance companies against plaintiff and Anna Dogariu to require them to interplead to settle ownership of the proceeds of the insurance policies. Decree and judgments for Anna Dogariu. Joseph Dogariu appeals. Affirmed.

*Gerald Kane* and *Richard A. MacRae,* for Joseph Dogariu.

*Emil Wm. Colombo,* for Anna Dogariu.

*Jorgensen & Alexander,* for Union Mutual Life Insurance Company.

STARR, J. John Dogariu, a resident of Detroit, had been married to Anna Dogariu for about 16 years. Joseph Dogariu, 26 years old, was his son by

a former marriage. At about 11 o'clock p.m., October 3, 1941, John Dogariu sustained injuries in an automobile accident in Arenac county, which resulted in his death a few hours later on October 4th. Following the accident he was removed to a hospital, and, being aware of the seriousness of his injuries, he executed the following will, which was prepared by an attorney at his request:

"It is my will, order, direction and order that my estate be devised as follows: one-half of insurance to Joseph Dogariu, my well beloved son, and

"One-half of insurance to Anna, my dearly beloved wife, this insurance amounts to between $15,000 to $16,000 insurance.

"I appoint Steve Laszic to oe my executor, 5028 Russell street, Detroit, Mich.

"The house to wife Anna, that is the house on 9755 Wayburn avenue, Detroit, Michigan.

"My car to Joseph Dogariu, my son.

"My personal checking account balance to go toward the funeral expense, the residue of the checking account to my son, Joseph."

After a contest by the widow, such will was admitted to probate in Wayne county, and defendant Stevon Lazich was appointed special administrator of Dogariu's estate. The widow then filed her election not to take under the will (Act No. 288, chap. 2, § 69, Pub. Acts 1939 [Comp. Laws Supp. 1940, § 16289-2 (69), Stat. Ann. 1942 Cum. Supp. § 27.3178 (139)]).

At the time of his death John Dogariu held four policies of life insurance with benefits aggregating $13,000, issued by defendant Union Mutual Life Insurance Company, which designated his wife, Anna, as beneficiary. He also held one policy in the amount of $3,750, issued by defendant United States Fidelity & Guaranty Company, which designated his wife, Anna, as beneficiary.

On December 17, 1941, the widow, Anna Dogariu, began a law action against the Union Mutual company and on December 19, 1941, an action against the Fidelity & Guaranty company to recover on their respective policies. On December 24, 1941, plaintiff Joseph Dogariu began the present chancery action against the widow, Stevon Lazich as special administrator, the Union Mutual company, and the Fidelity & Guaranty company, alleging in substance that his father's will had effected a change of beneficiary in the several insurance policies and that he was entitled to one half the proceeds of such policies. The widow answered, denying plaintiff's right to the relief sought and alleging in substance that, as the beneficiary named in the policies, she was entitled to the full proceeds. The two insurance companies filed answers and cross bills of interpleader. In pursuance of stipulations, decrees of interpleader were entered, and the insurance companies paid the proceeds of their respective policies into court. The three cases were then consolidated for trial.

In an able opinion the trial court determined that the will of John Dogariu did not change the beneficiary named in the five policies, and on August 5, 1942, a decree was entered granting the widow the full proceeds of the policies and dismissing the bill of complaint. On the same date judgments were entered in favor of the widow in her two law actions against the insurance companies. Plaintiff appeals from the decree in the chancery case, which we shall consider *de novo*. There was no appeal from the law judgments.

It appears that because plaintiff Joseph Dogariu did not file an appeal bond in the present chancery case, the clerk of the court, on September 11, 1942, paid the net proceeds of the policies, *i.e.*, the sum of about $16,000, to the widow and appellee, Anna

Dogariu. On this appeal plaintiff contends, in effect, that he is entitled to recover from Anna Dogariu one-half of the amount she received as the proceeds of such policies.

The only question requiring determination is whether or not the will of John Dogariu effected a change of beneficiary in the five insurance policies. One policy issued by the Union Mutual company contained the following provision regarding change of beneficiary:

"The insured may from time to time, while this policy is in force, change any beneficiary hereof, upon filing with the company at its office in Portland, Maine, a written request therefor, accompanied by this policy for indorsement."

Each of the other three policies issued by the Union Mutual company contained the following provision:

"Change of beneficiary. While this policy is in force, providing the right to change beneficiary has been reserved, the insured may from time to time change the beneficiary * * * by filing at the home office of the company a written request therefor, accompanied by this policy for indorsement. Such change shall take effect only upon the indorsement of the same on the policy by the company."

All four policies of the Union Mutual company contained identical provisions reading as follows:

"Change of contract. Any change in the terms or beneficiaries of this contract, or waivers of any of its terms or conditions or of any forfeiture must be in writing, signed by the president, vice-president, secretary, assistant secretary, actuary or

assistant actuary, and indorsed on the policy. No person is authorized to make any changes in this contract or waive any forfeiture of it, except as herein provided.''

The policy issued by the Fidelity & Guaranty company provided:

''No change in this policy shall be valid unless approved by an executive officer of the company, and such approval be indorsed hereon.''

Plaintiff admits, in effect, that there was no compliance with the requirements of the policies as to change of beneficiary. However, he contends that, as the deceased did ''all in his power to effectuate a change of beneficiary,'' a court of equity should make an equitable division of the insurance in accordance with the wishes of the deceased, as expressed in his will. We cannot agree with such contention.

To hold that the will effected a change of beneficiary or justified an equitable division of the insurance proceeds would be to disregard entirely the terms and provisions of the policies prescribing the steps and procedure necessary to effect a change of beneficiary. The policies were contracts between the insurers and deceased, and we are not disposed to disregard the policy provisions, which were for the benefit and protection of the insured, the insurer, and the beneficiary. The policies had been in John Dogariu's possession at all times, and he had made no effort to change the beneficiary prior to executing his death-bed will. Furthermore, there was no showing that, prior to executing such will, he had expressed any desire or intention of changing the beneficiary. The rule of law properly ap-

plicable to the present case is stated in 2 Couch on Insurance, § 318, p. 888, as follows:

"If the contract of insurance, or the laws of the insuring society, prescribe a certain way in which the beneficiary shall be designated or changed, and do not include the right to change the direction by will, the member is bound by such provisions or laws, and cannot designate a beneficiary by will."

Each of the policies provided, in substance, that a change of beneficiary would not be effective until approved by an officer of the insurer and the policy sent to the insurer for indorsement of approval and change of beneficiary. In 2 Couch on Insurance, § 315a, pp. 864, 865, it is stated:

"The mode and manner of making a change of beneficiary pursuant to reserved power is subject to reasonable regulations, provided such regulations are expressed in the insurance policy. Consequently, where the contract of insurance outlines the manner or method by which beneficiaries may be designated or changed, the steps or formalities so stipulated must be at least substantially complied with, it being quite generally conceded that in such a case a designation can be made effective only by following the policy provisions and by conforming to the manner or mode specified in the contract. In fact, the beneficiary named in a policy of life insurance cannot be deprived of his rights otherwise than in the manner which it provides."

In 2 Joyce on Insurance (2d Ed.), p. 1674, § 740a, it is stated:

"The provisions of a life policy as to the manner of changing the beneficiary must be complied with, at least, substantially so, for in such case the change can be made effective only by following the policy

provisions and by conforming to the manner or mode specified in the contract. So where a policy of life insurance provides that a change of beneficiary shall be made by indorsement in writing and shall not take effect until indorsed on the policy by the home office, no act of the insured can effect such a change in the absence of such indorsement."

In the case of *Supreme Lodge, Knights of Honor,* v. *Nairn,* 60 Mich. 44, a benefit certificate was issued to one Traver, which designated his sister, defendant Richardson, as beneficiary. In his lifetime Traver signed a form of indorsement upon such certificate designating that the same was payable to defendant Nairn, in trust. Traver placed such certificate with indorsement thereon in a sealed envelope and marked the same, "For Geo. Nairn, in case of my death." After Traver's death the envelope containing such certificate was opened. In the envelope was also a letter from Traver to plaintiff lodge which stated: "I desire to have the beneficiary in my certificate of membership changed from Mrs. F. F. Richardson to George K. Nairn, in trust; and in the event of my death, $2,000 to be paid to him." The question presented was whether or not Traver had effected a change of beneficiary from his sister, defendant Richardson, to defendant Nairn. The certificate provided, p. 51:

"The said supreme lodge hereby agrees to pay * * * Mrs. F. F. Richardson, the sum of $2,000, in accordance with and under the laws governing this order, upon satisfactory evidence of the death of said member, and the surrender of this certificate: provided, that this certificate shall not have been surrendered by said member, or canceled at his request, and another certificate have been issued in accordance with the laws of this order."

In holding that there was no change of beneficiary and that defendant Richardson was entitled to the benefits of the certificate, Chief Justice Campbell said in part, pp. 54, 55:

"The written contract, so far as it goes, is the measure of the rights of all parties. By the express terms of that certificate, it is provided that Mrs. Richardson shall have the money unless the certificate is surrendered and canceled and a new one issued, and the form of surrender printed on the back conforms precisely to the clause also inserted in the constitution, requiring every surrender and new direction to be signed by the member, and attested by the reporter under the lodge seal. * * *

"Under this arrangement, the purpose is evident that the corporation shall always be in written contract relations with a member who is alive and in good standing, which will show them the identity of the beneficiary to whom they are liable. * * * In the present case, the facts show conclusively that Traver did not mean to have any surrender made until after his death. * * * No one was authorized, while he lived, to take any steps to complete a surrender.

"The attestation of the reporter was not a mere ceremony. * * *

"It is plain that the formality of appearing personally before an officer of the corporation or its lodges, and having the execution seen and attested by such an officer, would be a valuable guard against fraud and forgery, which was not provided for without some intention. In our opinion, Traver never surrendered this certificate, and never attempted to surrender it, within either the letter or the spirit of its conditions, and the right of Mrs. Richardson remains as originally provided for."

In the case of *Grand Lodge, A. O. U. W.*, v. *Fisk*, 126 Mich. 356, one James Lount was a member of the lodge and held a certificate payable to his wife. She

died, and a few days later he made a will giving his "insurance policies, and the proceeds thereof" to Catherine McCall, in trust. The benefit certificate provided in part, pp. 357, 358:

"Any member desiring to change his beneficiaries may do so in the following manner, viz.: He shall fill out the blank form on the back of his beneficiary certificate authorizing the change. He shall have his signature attested by the recorder of his lodge, and the seal of the lodge attached thereto. When this is done he shall deliver his beneficiary certificate to the recorder of his lodge, together with a fee of 50 cents. The recorder shall forward the said certificate and fee to the grand recorder, who shall make a record of the change on the books of the grand lodge, and shall issue a new certificate in lieu thereof, payable as directed. on the back of the surrendered certificate."

In holding that the will did not change the beneficiary and that under another provision of the certificate the proceeds were payable to his only heir at law, the court said, p. 360:

"There are many (decisions) which hold that the provision is a material part of the contract, and mandatory, and that an attempt by a member to make a change in beneficiary in any other than the designated manner is wholly ineffectual." Citing *Supreme Lodge, Knights of Honor,* v. *Nairn, supra.*

In the case of *Ancient Order of Gleaners* v. *Bury,* 165 Mich. 1 (34 L. R. A. [N. S.] 277), the deceased held a benefit certificate in which his son, Byron Bury, was named as beneficiary. On January 11, 1909, the day before his death, the deceased, being ill, summoned the local secretary of the company to his bedside for the purpose of designating a change of beneficiary. He executed a direction to change

the beneficiary and turned it over to the local secretary. Such direction was mailed by the local secretary to the supreme secretary several hours after his death on January 12th. The deceased had not paid the fee of 25 cents for a transfer or change of beneficiary, as required by the following provision of the company's bylaws, which, by reference, was made a part of the certificate:

"No certificate can be transferred by a member to any person other than provided in article 1 (c), and no transfer of a certificate will be binding on the order unless consent thereto is given by the supreme secretary. In case a member desires to change the beneficiary named in his or her certificate, he or she shall make a written request therefor and deliver same, with the certificate fee of 25 cents, to the secretary of his or her arbor, who will forward the same to the supreme secretary, who will thereupon, if found to be made payable as hereinbefore provided, issue a new certificate."

In holding that there was no change of beneficiary, the court said in part, pp. 2, 3:

"The facts show that the member did everything except the payment of the fee when death cut him off; death intervening even before the local secretary could transmit the written designation to the grand secretary by which the transfer was to be made. The payment of the transfer fee is a condition precedent under the bylaws before a member could compel the new certificate to be issued. * * * Has deceased done everything that the bylaws required him to do before he is entitled as a matter of right under the bylaws to the issuance of a new certificate, and a new designation of beneficiaries? Admittedly he has not, in that he has not paid the necessary transfer fee. * * * The purpose of the bylaw is to afford protection to the order in the payment of the benefit to avoid complications and litigation, and it is as binding upon the member as it is upon the order

itself. * * * In this case if the member had lived and had done no more than he did do, he was not in a position to compel the issuance of a new certificate. * * * To extend the rule to give effect to his apparent intention would result in limitless litigation, and the very thing sought to be avoided by the by-law.

In the case of *Aetna Life Ins. Co. v. Mallory,* 291 Mich. 701, the Aetna company, on March 1, 1935, issued to C. Franklin a certificate in the sum of $1,000 under a group insurance policy. A niece, Ruth Franklin, was designated as beneficiary. On December 17, 1937, C. Franklin executed a will whereby he attempted to give $350 of such $1,000 policy to Edith Elland. The question presented was whether or not such will effected a change of beneficiary as to a part of the proceeds of the policy. The group insurance policy contained the following provision, p. 703:

"Any employee insured hereunder may by written request designate a new beneficiary as often as desired; such designation to become effective only upon receipt of same at the home office of the company."

The certificate issued under such policy provided, p. 703:

"Each employee is at liberty to name the beneficiary to whom he desires payments to be made under the policy, which beneficiary is subject to change at his signed request at any time as provided in the policy."

In determining that the will did not effect a change of beneficiary, Mr. Justice SHARPE, writing for the court, said in part, pp. 706, 707:

"The general rule appears to be that where the contract outlines a method of changing the beneficiary and the insured had ample time to comply with

the contract, an attempted change of beneficiary by will is ineffective. * * *

"In the case at bar we find that C. Franklin made a will 10 days before his death, gave it to Edith Elland without any specific directions as to what to do with it. There was no intention on the part of C. Franklin to deliver or have delivered any notice to the insurance company of his intention to change the beneficiary during his lifetime. It was his intention that the change in the beneficiary would only become effective upon his death."

In *Johnson* v. *Agricultural Life Ins. Co.*, 225 Mich. 331, a policy held by the insured designated her brother as beneficiary. After her marriage she concluded to change the beneficiary and designate her husband as beneficiary. She delivered her policy to an agent of the company and notified him of the change she intended to make. The agent explained to her that he had no blanks for change of beneficiary, but that he would send to the home office for such blanks. Before the blanks arrived, the insured died. The question presented was whether or not such expressed intention effected a change of beneficiary. The policy provided:

"If there be no existing assignment of this policy, the insured may designate a new. beneficiary by filing at the home office written notice thereof on forms provided for this purpose."

In determining that there was no change of beneficiary, we said:

"The insured had agreed that if she desired to change the beneficiary she would designate the new beneficiary in writing on forms provided for that purpose, and file it with the home office. * * * Under the proofs it appears that the home office had no knowledge at the time of her death that she contemplated a change of beneficiary in her policy. * * * It does not appear that she ever filed any paper with

the home office advising it that she desired to change the beneficiary in her policy. It, therefore, conclusively appears that she did not do all that she could do to effectuate a change of the beneficiary. * * *

"The company was not bound to make the change until it had her written application and signature on a blank form prescribed for that purpose."

See, also, *Ester* v. *Prudential Ins. Co. of America,* 298 Mich. 330; *Supreme Court, I. O. F.,* v. *Frise,* 183 Mich. 186; *Maccabees* v. *Wilber,* 217 Mich. 28; *Freund* v. *Freund,* 218 Ill. 189 (75 N. E. 925, 109 Am. St. Rep. 283); *Jacobs* v. *Abraham Lincoln Life Ins. Co.,* 223 Iowa, 1157 (274 N. W. 879); *Abbott* v. *Supreme Colony United Order of Pilgrim Fathers,* 190 Mass. 67 (76 N. E. 234); *Knights of Maccabees of the World* v. *Sackett,* 34 Mont. 357 (86 Pac. 423, 115 Am. St. Rep. 532); *Fink* v. *Fink,* 171 N. Y. 616 (64 N. E. 506); *Stringham* v. *Dillon,* 42 Ore. 63 (69 Pac. 1020); *Reid* v. *Durboraw* (C. C. A.), 272 Fed. 99; Niblack on Insurance (2d Ed.), pp. 415, 416, § 218.

The above authorities establish the rule that where the policy of insurance provides the method and procedure for changing the designated beneficiary, there must be at least substantial compliance with such provisions to effect the change. The present case does not fall within the exception that the court will recognize a change of beneficiary where the insured has substantially complied with the policy's requirement, and completion is prevented by reason of the policy's being lost, mislaid or unobtainable. Such exception to the general rule is stated in *Quist* v. *Western & Southern Life Ins. Co.,* 219 Mich. 406, 410, as follows:

"Excuses for not producing the policy or certificate have been recognized in this State. In *Grand Lodge, A. O. U. W.,* v. *Child,* 70 Mich. 163, the cer-

tificate was lost. In *Grand Lodge, A. O. U. W.,* v. *Noll,* 90 Mich. 37 (15 L. R. A. 350, 30 Am. St. Rep. 419), the certificate was lost or mislaid. In *Grand Lodge, A. O. U. W.,* v. *Kohler,* 106 Mich. 121, the original beneficiary had the certificate in her custody and refused to deliver it.''

Furthermore, the will of John Dogariu did not designate the son as a beneficiary but only attempted to give him one half the proceeds of the insurance. Such attempted disposition of his insurance by will could be effective only upon his death. However, upon his death the widow, as beneficiary, was immediately vested with the right to the insurance. As said in *Jacobs* v. *Abraham Lincoln Life Ins. Co., supra,* p. 1164:

''No change of beneficiary having been accomplished prior to the death of the insured, the right of the plaintiff (beneficiary) to the proceeds became vested at her death.''

In *Knights of Maccabees of the World* v. *Sackett, supra,* the court said, p. 366:

''The interest of the beneficiary attaches instantly upon the death of the insured, and the question whether a change has been effected must be determined as of that particular instant of time.''

See, also, *Ancient Order of Gleaners* v. *Bury, supra; Fink* v. *Fink, supra; Wandell* v. *Mystic Toilers,* 130 Iowa, 639 (105 N. W. 448).

The payment of the proceeds of the policies into court in pursuance of stipulations and decrees of interpleader did not affect the claim of the widow as beneficiary, because her right to the insurance became absolute upon the death of her husband. *Knights of Maccabees of the World* v. *Sackett,*

*supra; Reid* v. *Durboraw, supra; Ireland* v. *Ireland,*
42 Hun (49 N. Y. Sup. Ct.), 212.   In 2 Couch on
Insurance, § 308, it is stated, p. 828:

"The rights of the named beneficiary vest at the
instant of the insured's death, and cannot be affected
by any subsequent act of the insurer."

One of the benefits of life insurance is that, in
most instances, it is paid to the designated bene-
ficiary with reasonable promptness after the death
of the insured.   To hold that, without substantial
compliance with the provisions of the policy rela-
tive to change of beneficiary, an insured, by his will
alone, could change such beneficiary, would open
the door to possible fraud and irregularities and
would create uncertainty tending to interfere with
the customary practice of prompt payment.   We
are convinced that in the absence of a showing of
substantial compliance with the policy's require-
ments, the will of the insured, standing alone, should
not effect a change of beneficiary.

We conclude that under the facts and circum-
stances shown by the record in the present case, the
will of John Dogariu did not change the designated
beneficiary in the insurance policies in question.

The decree of the trial court, entered August 5,
1942, is affirmed.   Defendant and appellee Anna
Dogariu shall recover costs.

BOYLES, C. J., and CHANDLER, NORTH, WIEST, BUT-
ZEL, BUSHNELL, and SHARPE, JJ., concurred.