**EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES v. McCLELLAND et al.**

Civ. A. No. 1266.

United States District Court
W. D. Michigan, S. D.

Aug. 18, 1949.

Butterfield, Amberg, Law & Buchen and R. Dale Law, of Grand Rapids, Mich., for plaintiff.

Gerald M. Henry, of Grand Rapids, Mich., for Elizabeth McClelland, as guardian of Margaret Ann McClelland and Robert McClelland, minors, and Margaret McClelland, defendants.

Uhl, Bryant, Slawson & Wheeler and Harold W. Bryant, of Grand Rapids, Mich., for Charles Mitchell, Jr., Douglas Mitchell and Jack Mitchell, defendants.

STARR, District Judge.

On January 28, 1949, plaintiff insurance company began the present civil action of interpleader in pursuance of Title 28 U.S.C.A. § 1335. The case was submitted on an agreed stipulation of facts, the material facts being as follows:

On June 8, 1905, plaintiff issued its policy No. 1456337 known as a "twenty-year endowment bond" to James C. Quinlan, thereby insuring his life in the sum of $1,000. Frances M. Quinlan, the wife of the insured, was named as beneficiary. The policy having matured through the payment of all premiums and the expiration of the endowment and dividend-accumulation period, and the insured having elected to convert it into a paid-up life-assurance policy, it was agreed by plaintiff and the insured on June 29, 1925, by an endorsement on the policy, that it would be continued in force as a fully paid-up life policy in the amount of $2,700, payable in a single sum at the death of the insured to his wife, if living, but if not living, then to his executors, administrators or assigns. This endorsement further provided that the insured reserved the right to change the beneficiary in "the manner stipulated in the policy." The policy provided:

"VI. Change of Beneficiary

"This Bond is issued with the express understanding that the Subscriber may, from time to time during its continuance, change the beneficiary or beneficiaries, by filing with the Society a written request, duly acknowledged, accompanied by this Bond, such change to take effect upon the endorsement of the same on the Bond by the Society, provided this Bond has not been assigned and notice of such assignment recorded on the books of the Society, or if assigned that all assignments shall have been duly cancelled or released on the books of the Society. No assignment of this Bond or any interest therein shall be effectual against the Society unless the same be in writing and filed with the Society."

On December 23, 1942, as shown by endorsement or rider attached to the policy, the insured, exercising his right to change the beneficiary therein, revoked the aforesaid designation of his wife, who had died, and named as beneficiaries his grandchildren, Margaret Ann McClelland and Robert Clement McClelland. About five years later, on December 31, 1947, the insured wrote plaintiff company regarding a further change of beneficiaries as follows:

"Enclosed find my policy #1456337. I am returning this policy so that the beneficiary can be changed from that was made on Dec. 23, 1942.

"You will kindly change to read as follows:

"Robert McClelland—Margaret McClelland

"James Peter Quinlan; Francis K. Quinlan

"Charles Mitchell Jr.

"Douglas Mitchell; Jack Mitchell

"David Quinlan; Karon Quinlan

"Francis Dood; Thomas Dood, Betsy Dood

"The returns are to be divided equally.

"I would like to have the total amounts remain in your company and made payable to the different children as they may reach the age of 21 years.

"This would then be in the form of a Trust Fund and should be subject to interest bearing.

"Kindly advise if this plan can be carried out."

This letter and the policy were received by plaintiff's Grand Rapids office and forwarded to its Detroit office. The Detroit

office retained the policy but forwarded the letter to its home office in New York, where it was received on January 8, 1948. Two days later, on January 10th, the insured died at Grand Rapids, Michigan. On January 21st, apparently unaware of the insured's death, plaintiff replied to his letter of December 31st as follows:

"Dear Mr. Quinlan:

"Re: Policy 1456337

"We are enclosing a beneficiary provision which has been prepared by our Home Office in connection with the above policy.

"It is not possible to offer a mode of settlement request since the amount involved is $2700 and twelve beneficiaries are being designated to share equally. There must be a minimum of $1000 available for each beneficiary before we can provide for a mode settlement, therefore, we have prepared a single sum request. The relationship of the beneficiaries should be inserted on the request, and the insertions should be initialed by you. Please note that your signature on this form *should be acknowledged by a notary public as required by the terms of the policy.*"

The "beneficiary provision" or "single sum request" enclosed with plaintiff's letter read as follows:

"To The Equitable Life Assurance Society of the United States, 393 Seventh Avenue, New York 1, N. Y.

"Re: Policy No. 1,456,337

"This is to certify that there is no existing assignment of the above numbered policy. It is hereby requested that the following change of beneficiary be made effective by endorsement on the said policy.

"Beneficiary Provision:

"The net sum due under this policy by reason of the death of the Subscriber shall be paid in a single sum in equal shares to Robert McClelland, Margaret McClelland, James Peter Quinlan, Francis K. Quinlan, Charles Mitchell, Jr., Douglas Mitchell, Jack Mitchell, David Quinlan, Karon Quinlan, Frances Dood, Thomas Dood, and Betsy Dood, if living at the death of the Subscriber or to such of them as shall then be living, should none then be living to the executors or administrators of the Subscriber.

"Relationship of Robert McClelland and Margaret McClelland ————

"Relationship of James Peter Quinlan and Francis K. Quinlan ————

"Relationship of Charles Mitchell, Jr., Douglas Mitchell and Jack Mitchell ————

"Relationship of David Quinlan and Karon Quinlan ———— .

"Relationship of Frances Dood, Thomas Dood and Betsy Dood ————

"Dated at ———— 1948.

"Signature of subscriber ————

"Address ———— * * *

"State of ————

"County of ————

"On this ———— day of ———— in the year of our Lord 1948 before me personally came ———— to me known and known to me to be the individual described in and who executed the foregoing and acknowledged that he executed the same.

————

Notary Public."

Apparently not having been advised of the insured's death, the plaintiff on February 18th again wrote him as follows: "On January 21, we sent you a beneficiary provision which had been prepared by our Home Office in connection with the above policy. Since the change of beneficiary is not effective until actually endorsed on the policy by the Society we suggest that you give this matter your earliest attention."

On March 17th plaintiff again wrote the insured as follows: "Since we have not had any reply to our letters of January 21, and February 18, regarding the proposed change of beneficiary under the above policy we assume that you have decided not to complete the beneficiary change at this time. We are, therefore, returning your policy but if we can be of further service to you in connection with the contemplated change please inform us."

On June 29th, in response to a letter from the executor of the insured's estate inquir-

ing relative to payment on the policy, plaintiff replied as follows:

"Re: Policy No. 1456337, James C. Quinlan, Deceased.

"Your letter of June 16 to Mr. C. W. Pratt, the Society's Cashier at Grand Rapids, has been referred to this office for attention and reply.

"We should like to point out that while it is true we were not prepared to include the mode of settlement suggested by Mr. Quinlan in the change of beneficiary proposed by him in his letter of December 31, 1947, we were quite ready to proceed with the change of beneficiary in favor of the 12 persons mentioned in his said request, payment to be made to them in a single sum. Incidentally, these 12 persons were not children of the insured; it appears that some of them, at least, are grandchildren of Mr. Quinlan.

"Inasmuch as we have on file a signed request by Mr. Quinlan to have the beneficiary under this policy changed to the 12 persons mentioned in his letter, we do not feel that we can safely disregard this request. It is our understanding that Margaret Ann McClelland and Robert Clement McClelland, the grandchildren of the insured in whose favor the beneficiary under this policy was changed on December 23, 1942, are minors. In the circumstances, therefore, we would be willing to make payment to the 12 proposed beneficiaries on the basis of a request so to do made by the legal guardians of the estates of the two said grandchildren presently named in the policy, subject to approval of the court. An alternative would be for such of the 12 proposed beneficiaries who are of legal age and the guardians of the estates of such of them who may be minors, with court approval, to agree among themselves as to the distribution of the proceeds of this policy. If neither of these suggestions is satisfactory, payment of the death claim could be deferred until Margaret Ann McClelland and Robert Clement McClelland attain legal age, at which time they could consider authorizing the Society to make settlement in the manner proposed by Mr. Quinlan in his letter of December 31, 1947.

"Unless settlement can be effected by following one of the suggestions made above, it would appear that no payment can be made until such time the courts decide who is entitled to the funds."

In its complaint plaintiff admits liability under the policy to the persons legally entitled thereto, of the sum of $2,718.27, that being the face amount of $2,700, plus an outstanding dividend of $17 and a postmortem dividend of $1.27. It asks the court to determine who is entitled to the proceeds of the policy and the manner in which payment shall be made; also that its costs, expenses, and reasonable attorneys' fees be determined and ordered paid out of the proceeds. Plaintiff has given bond payable to the clerk of the court in the amount of $2,718.27, such bond being conditioned upon its compliance with the future order or judgment of the court with respect to the subject matter of the controversy.

Two groups of the insured's grandchildren, all of whom are minors, are rival claimants to the proceeds of the policy and are named as defendants in this action. One group of claimants consists of Margaret Ann McClelland and Robert Clement McClelland, who were made beneficiaries by the insured on December 23, 1942, and who are represented by their guardian, Elizabeth McClelland. This group has filed answer contending that the insured's attempt to change the beneficiaries of his policy by his letter of December 31, 1947, was ineffective and that, therefore, they, the McClelland children, are entitled to the full proceeds of the policy.

The other group of claimants consists of Charles Mitchell, Jr., Douglas Mitchell, and Jack Mitchell, who are represented by Charles Mitchell, their guardian ad litem; and James Peter Quinlan, Francis K. Quinlan, David Quinlan, Karon Quinlan, Francis Dood, Thomas Dood, and Betsy Dood, who are represented by Orrie J. Sluiter, their guardian ad litem. This group has filed answers contending that the insured's attempt to change the beneficiaries of his policy by his letter of December 31, 1947, was effective and revoked his prior desig-

nation of the McClelland children as sole beneficiaries and that, therefore, the proceeds of the policy should be distributed equally among the 12 minor grandchildren.

The principal question to be determined is whether or not under the facts and circumstances outlined above, the insured effected a valid change of the beneficiaries of his policy. That is, did he effect a valid revocation of his former designation of the two McClelland children as beneficiaries and substitute therefor all of his 12 grandchildren as beneficiaries?

At the outset the court must determine whether the insured's letter of December 31, 1947, was in fact a request for change of beneficiaries or merely an inquiry as to whether or not his plan for a change of beneficiaries and manner of payment could be carried out. He began this letter in positive language, stating: "I am returning this policy so that the beneficiary can be changed from that was made on Dec. 23, 1942. You will kindly change to read as follows: (listing the names of the 12 grandchildren). The returns are to be divided equally." However, after the use of this seemingly directory language, the insured continued his letter in tones of inquiry by stating his desires as to the manner in which he "would like to have" the proceeds paid upon his death, and ended with the inquiry, "kindly advise if this plan can be carried out." Although this letter is not without ambiguity, the court is convinced that his expression of desire and inquiry had reference solely to the manner in which the proceeds of the policy might be paid to the beneficiaries. Having expressed a desire that the proceeds be held in the form of an interest-bearing trust fund payable in equal shares to the 12 grandchildren as they reached their majority, the insured then inquired as to whether this plan could be carried out. The court concludes that the insured's letter of December 31, 1947, was a request for change of beneficiaries and not simply a letter of inquiry.

We turn now to the principal question— was there a valid change of beneficiaries? As indicated above, the policy provided that the insured could change the benefi-

ciary by filing with the insurer a written request "duly acknowledged" and accompanied by the the policy, such change to take effect when endorsed on the policy by the insurer. The Quinlan, Mitchell, and Dood children concede that there was not a complete compliance with these requirements of the policy; that is, the insured's request for a change of beneficiaries was not acknowledged before a notary public, nor was there any endorsement of the change on the policy by the insurer. However, they contend that strict compliance with the requirements of the policy regarding a change of beneficiaries was not necessary and that there was a substantial compliance which did effect a change.

Although there is authority to the contrary, it is well established that, under certain circumstances, a change of beneficiary can be accomplished without a strict or complete compliance with the conditions of a policy. Thus, it has been held that where the insured has done all that the policy requires him to do in making a change of beneficiary and there remains only a formal, ministerial act on the part of the insurer to complete the change—an act which the insurer was bound to perform and undoubtedly would have performed had it not been for the intervention of the insured's death—equity will protect the rights of the intended beneficiary and consider the change as effected. Equitable Life Assurance Society of the United States v. Hitchcock, 270 Mich. 72, 258 N.W. 214, 106 A. L.R. 591; Quist v. Western & Southern Life Ins. Co., 219 Mich. 406, 189 N.W. 49; Supreme Court, I. O. F., v. Frise, 183 Mich. 186, 150 N.W. 110. See also authorities cited in 78 A.L.R. 974. The Quinlan, Mitchell, and Dood children rely upon these authorities Their contention might be sound if the insured in the present case had done all that the policy required him to do, and if all that remained to be done to make the change of beneficiaries complete was the purely ministerial act on the part of the insurer in endorsing the change on the policy. However, the insured had not done all that he was required to do to effect a change of beneficiaries, that is, his request for a change

was not acknowledged by him before a notary public, as expressly required by the terms of the policy. He did not comply with or even substantially comply with, this provision of the policy. In Ester v. Prudential Insurance Company of America, 298 Mich. 330, 335, 299 N.W. 96, the court quoted with approval from Ancient Order of Gleaners v. Bury, 165 Mich. 1, 5, 130 N.W. 191, 193, 34 L.R.A.,N.S., 277, as follows: " 'When a mutual benefit society has, under the powers and within the limit of its charter, provided in its by-laws a particular method of changing a beneficiary, or has set forth in its certificate a way by which the change may be made, no change of beneficiary may be made in any other mode or manner. The reason for this rule is not difficult to discover. It is based upon the familiar maxim that the expression of one thing excludes other and different things. When a society frames a set of rules providing for the distribution of a fund, and for the rights of beneficiaries and members, it must be assumed that it excludes every other mode and manner. Any other conclusion would lead to the most interminable confusion in the law applicable to the distribution of insurance money, and fritter away in the expenses of uncertain litigation, funds created for the benefit of widows, orphans, and heirs. But there is still another reason. It cannot be said that a beneficiary named in a certificate has no rights therein because he has no vested rights. The beneficiary has a right to the proceeds of the certificate of insurance, subject to the right of the member to change the beneficiary according to the terms of the by-laws and regulations of the society, which are a part of the contract of insurance; and the right of the beneficiary to have this contract carried out in the manner provided for is as binding upon the member as his right to change the beneficiary is binding upon the beneficiary and the society.' Niblack on Insurance, pp. 415, 416."

See also Dogariu v. Dogariu, 306 Mich. 392, 11 N.W.2d 1; 2 Joyce on Insurance, 2d Ed., § 740a, page 1674; 2 Couch on Insurance, § 315a, pages 864, 865. The decision in Berg v. Damkoehler, 112 Wis. 587, 88 N.W. 606, is directly applicable to the question as to change of beneficiary in the present case. In that case the policy provided that the beneficiary could be changed by the insured at any time "by filing with the company a written request, duly acknowledged, accompanied by this policy, such change to take effect upon indorsement of the same upon the policy of the company." On April 13th the insured sent the policy to the company with a written request for change of beneficiary, which was not acknowledged before a notary public. This letter was received at the company's home office on April 17th. The company, refusing to recognize the request because it was not acknowledged, retained the policy and sent to its local agent a blank form it had prepared for policyholders to sign when they desired a change in beneficiary, with instructions to have it signed and properly acknowledged. This form was received on April 22d, but the insured died the same day without having executed it. In holding that a change in beneficiary had not been effected, the court said, 88 N.W. at page 607: "The general rule is that the change in beneficiaries must be made in the manner required by the policy. * * * This rule, however, in this state, is subject to several exceptions. * * * Other exceptions are where * * * he (the insured) has pursued the rules, and done all in his power to change the beneficiary, but dies before the new policy is issued. * * * The defendant insists that the facts of this case bring it within the exception last mentioned. The difficulty with his contention is that it is not supported by the facts. The unacknowledged request was not in compliance with the requirements of the policy. The company refused to recognize it. The proper authentication of the written request was of importance to all concerned. It was material because made so by the contract. It was a protection to the company as against payment to persons who might fraudulently secure possession of the policy. It was a safeguard of the insured and his beneficiary for the same reason. * * * Upon the death of the insured her (the original beneficiary's) interest be-

694

came an absolute property interest in the proceeds of the policy. The payment of the money into court by the company did not change the legal position of either party. * * * Unless the change of beneficiaries had been properly made before the death of the insured, or something done equivalent thereto under the exceptions mentioned, the company was bound absolutely to pay the amount of the policy to plaintiff. After the death of the insured, the company could not change the legal rights of the person entitled to the money by payment into court."

See also Abbott v. Supreme Colony United Order of Pilgrim Fathers, 190 Mass. 67, 76 N.E. 234; Security Company of Pottstown v. Pacific Mutual Life Ins. Co., 14 Pa. Dist. & Co. R. 554, 30 Pa. Co. Ct. R. 401.

It cannot be effectively argued that the plaintiff in the present case waived the express provision of its policy which required that a request for change of beneficiary be acknowledged before a notary public. In its letter of January 21st to the insured enclosing a form for change of beneficiary, which provided for a "single sum request," plaintiff said: "Please note that your signature on this form should be acknowledged by a notary public as required by the terms of the policy." This letter and the insurer's subsequent letters of February 18th and March 17th clearly indicate that it did not waive the policy provision requiring acknowledgment. Its letter of June 29th to the executor of the insured's estate merely explained that it could not pay the proceeds of the policy without the consent of all claimants or until it was judicially determined who was entitled thereto. The insurer cannot be said to have waived this express requirement for a change of beneficiary, where it continually insisted that the requirement be followed. Rumsey v. New York Life Ins. Co., 59 Colo. 71, 147 P. 337.

The Quinlan, Mitchell, and Dood children contend that the filing of this action of interpleader by the plaintiff insurer and its filing of the requisite bond with the clerk of the court operate as a waiver of the policy's requirements as to change of beneficiary, and thereby effectuate an otherwise defective substitution of beneficiaries. There is some authority for this proposition, Thomas v. Locomotive Engineers' Mut. Life & Acc. Ins. Ass'n, 191 Iowa 1152, 183 N.W. 628, 15 A.L.R. 1240, but such is not the better view. See 42 Harvard Law Review 250. The rights of the beneficiaries named in a life-insurance policy should certainly not be made to depend upon the discretionary election by the insurance company as to whether or not it will begin an interpleader suit to determine who is entitled to the proceeds of the policy. The beginning of a suit to determine the rights of rival claimants and the payment of the proceeds of a policy into court, or the giving of a bond to the clerk of the court, will not change the legal rights of the claimants. Their rights must be determined as of the time of the insured's death and cannot be subsequently changed by the insurer. By beginning suit the insurer does not concede the claim of any particular beneficiary but merely asks the court to determine to whom it should pay the proceeds of the policy. The better view is that the rights of named beneficiaries become vested on the death of the insured and cannot thereafter be affected by any subsequent act of the insurer. In Johnson v. Johnson, 5 Cir., 139 F.2d 930, 933, 151 A.L.R. 268, the court said: "We agree with the lower Court that the Insurance Company could have waived strict compliance with the provisions for the change of beneficiary in a policy which permits, as does this one, the insured to change the beneficiary without the consent of the beneficiary theretofore named, but we think that such a rule is restricted to instances where the waiver was made during the life of the insured. The rights of the parties became fixed at the death of the insured, and the Insurance Company could not thereafter by waiver affect or divest the right of a beneficiary which became vested upon the death of the insured. We disagree with the lower Court that the filing of the interpleader suit, under the circumstances of this case, should be construed as a waiver so as to affect rights of third parties which had become fixed by the

death of the insured prior to such alleged waiver."

See also Dogariu v. Dogariu, supra; Berg v. Damkoehler, supra; Freund v. Freund, 218 Ill. 189, 75 N.E. 925, 109 Am. St.Rep. 283; Supreme Lodge of Fraternal Brotherhood v. Price, 27 Cal.App. 607, 150 P. 803; Knights of Columbus v. Curran, 91 Conn. 115, 99 A. 485; Tillman v. John Hancock Mut. Life Ins. Co., 27 App.Div. 392, 50 N.Y.S. 470; Strianese v. Metropolitan Life Ins. Co., 221 App.Div. 81, 223 N.Y.S. 16; Kelley v. McDonald, Tex.Civ.App., 83 S.W. 2d 414; 2 Couch on Insurance, § 308, page 828.

■ For the reasons herein stated the court concludes that the insured's unacknowledged request of December 31, 1947, for a change of beneficiaries, and the subsequent letters of the insurer, did not effect a valid change of beneficiaries in the policy here in question. It follows, therefore, that Margaret Ann McClelland and Robert Clement McClelland, who were the beneficiaries designated in the policy at the time of the insured's death, are entitled to the full proceeds of the policy in accordance with the terms thereof, less the amount of plaintiff's attorneys' fees and disbursements as hereinafter allowed.

■ There remains for determination the question of assessment of interest. The McClelland children claim that they are entitled to interest from the date of the insured's death. The insurer denies that it is obligated to pay interest, on the ground that it has never denied liability or wrongfully retained the proceeds of the policy but has simply taken the position that it could not safely or in good faith make payment to any of the rival claimants until they had reached an amicable settlement among themselves or until their rights to the proceeds of the policy were judicially determined. It has generally been held that where an insurer admits its liability under a policy, pays the proceeds thereof into court, and asks for an adjudication of the rights of rival claimants, interest will not be assessed against it, on the theory that it has not wrongfully retained the proceeds of the policy. Podzunas v. Prudential Ins.

Co. of America, 125 Conn. 581, 7 A.2d 657, and Maycock v. Continental Life Ins. Co., 78 Utah 248, 9 P.2d 179. The court concludes that the insurer in the present case did not wrongfully retain the proceeds of the policy in question and that no interest should be assessed against it on the theory of wrongful retention.

■ However, a further question regarding interest is raised by the insurer's contention that if the McClelland children are entitled to the proceeds of the policy, it is only obligated to pay each of them on his or her eighteenth birthday one-half of the proceeds, with interest at three per cent from the date of entry of judgment. This contention fails to distinguish between interest claimed because of wrongful retention of the proceeds of the policy and interest imposed by the terms of the policy. Under the terms of the endorsement or rider of December 23, 1942, relating to modes of settlement, it was provided in effect that if the insured should die before either of the McClelland children attained 18 years of age, the share of the proceeds accruing to that child should be held by the insurer until he or she attained the age of 18 years, with interest at three per cent per annum, payable annually until said date, at which time the child would receive its share of the proceeds together with any accrued interest. It appears that Margaret Ann McClelland (now Mrs. Anthony Beurkens) became 18 on March 22, 1949, and that Robert Clement McClelland will become 18 on March 7, 1953. Therefore, under the terms of the policy, on March 22, 1949, Margaret Ann McClelland became entitled to one-half of the proceeds plus three per cent interest thereon from January 10, 1948 (the date of the insured's death), to March 22, 1949. However, she is not entitled to interest since March 22, 1949, because the retention of the proceeds of the policy by the insurer since that date was not wrongful or in bad faith. Podzunas v. Prudential Ins. Co. of America, supra; Maycock v. Continental Life Ins. Co., supra. As Robert Clement McClelland will not attain the age of 18 until March 7, 1953, the insurer is not obligated to pay his

696

one-half share of the proceeds of the policy until that date, but it is obligated under the terms of the policy to pay him annually three per cent interest on his share of the proceeds from January 10, 1948 (the date of the insured's death), to March 7, 1953.

█ Plaintiff has filed petition for allowance of attorneys' fees in the amount of $250 and for expense disbursements in the amount of $82.77. The amount claimed for attorneys' fees includes a considerable amount of time and effort in addition to the preparation and filing of the complaint, and appears to be reasonable compensation for the services rendered. The disbursements for court costs and other expenses likewise appear to be reasonable. Plaintiff's petition for allowance of attorneys' fees and disbursements is accordingly allowed, and those sums will be deducted from the proceeds of the policy before any distribution thereof.

As this case was submitted on an agreed stipulation of facts, and as the opinion sets forth the court's conclusions of law, it is deemed unnecessary to make separate findings of fact and conclusions of law.

Judgment will be entered in accordance with this opinion.