IRVINE *v.* IRVINE.

1. DIVORCE—PROPERTY SETTLEMENT—APPROVAL.
   Incorporation of provisions of a property settlement in inter-
   locutory decree indicates the court's approval of such provi-
   sions.

2. SAME—SEPARATION AGREEMENT—RECONCILIATION—COHABITATION.
   Reconciliation of parties to suit for divorce, resumption of
   marital relations and dismissal of the suit operate to avoid
   an agreement between them, made in contemplation of the
   granting of a decree of divorce, and restores the wife's full
   rights in her husband's property.

3. SAME — PROPERTY SETTLEMENT — RECONCILIATION — QUITCLAIM
   DEED.
   Quitclaim deed, executed by wife incident to and as a part of
   property settlement following bringing of suit for divorce,
   was nullified by subsequent reconciliation of the parties, their
   resumption of marital relations, and the dismissal of the
   case.

4. HOMESTEAD—POSSESSION—LAND CONTRACT PURCHASER.
   A homestead interest may be established in property of which
   one claiming such interest is in possession under a contract
   of purchase.

5. SAME—LAND CONTRACT VENDEE—DIVORCE—LIEN.
   Homestead rights of husband in property of which he was the
   sole land contract vendee at time of marriage were in existence

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 17 Am Jur, Divorce and Separation § 498.
[2, 3] 17 Am Jur, Divorce and Separation § 735.
[2, 3] Effect of reconciliation on separation agreement or divorce.
   40 ALR 1227; 85 ALR 420.
[4, 5, 6] 26 Am Jur, Homestead. §§ 58, 151.
[4, 5, 6] Estate or interest in real property to which a homestead
   interest may attach. 89 ALR 511.
[7, 8] 16 Am Jur, Deeds §§ 89, 90, 113.

at all times during his marriage to plaintiff, where it was occupied by him and plaintiff after the marriage until his death, the fact that an interlocutory decree was issued, which never became final, making it impossible for him to convey the homestead, or any part thereof, to another without the participation therein by plaintiff, even to create a lien in favor of such other person for money loaned to the husband (Const 1908, art 14, § 2; CL 1948, § 623.74).

6. VENDOR AND PURCHASER—SURRENDER OF OLD CONTRACT—HOMESTEAD—EXECUTION OF NEW CONTRACT.

Attempted surrender of original land contract by husband to the vendors thereunder and execution of new contract designating him and defendant as joint vendees, presumably to give defendant security for money loaned to the husband, was ineffective to give defendant an interest in the property, where divorce proceedings between the husband and plaintiff, then pending, were dismissed after the parties became reconciled and resumed marital relations, the property was at all times occupied as a homestead by the husband and plaintiff after their marriage and plaintiff never participated in the transaction.

7. EXECUTION OF INSTRUMENTS—RECORDING.

The fact that an instrument of conveyance is not executed with such formalities as to permit it to be recorded does not prevent it from being good as between the parties thereto.

8. DEEDS—EXECUTION OF INSTRUMENTS—DELIVERY—INTENT.

Carbon copy of quitclaim deed which was signed by defendant but not witnessed and acknowledged as was the original, but which copy was delivered to the grantee, *held,* to have been intended to pass any title defendant may have had to the grantee, under the circumstances, including fact that latter gave to defendant a promissory note for $500 as a part of the transaction.

Appeal from Kent; Verdier (Leonard D.), J. Submitted June 3, 1953. (Docket No. 28, Calendar No. 45,751.) Decided October 5, 1953.

Bill by Doris D. Irvine, individually and as administratrix of the estate of Charles F. Irvine, deceased, against Marie E. Irvine and others to set aside land contract and to restrain proceedings before a circuit

court commissioner. Decree for plaintiff. Defendant appeals. Affirmed.

*Floyd H. Skinner* and *Alphonse Lewis, Jr.*, for plaintiff.

*Linsey, Shivel, Phelps & Vander Wal*, for defendant.

CARR, J. This suit was instituted in circuit court to obtain injunctive relief and to determine the respective interests of the parties under a land contract for the purchase of a house and plot of ground in Plainfield township, Kent county. Plaintiff is the widow of Charles F. Irvine, who died January 19, 1951, and is the duly appointed administratrix of his estate.

The contract in question was executed on October 30, 1945, between Charles F. Irvine as vendee and Arthur and Alda Sandel as vendors, the agreed purchase price being $6,500 with a down payment of $1,000 and subsequent payments at the rate of $50 or more per month. At that time Irvine was the husband of defendant, from whom he was subsequently divorced in September, 1947, the decree confirming his sole ownership of the equity under the contract. The following June he married plaintiff with whom he occupied the property until the time of his death, subject, however, to certain absences on his part resulting from marital differences. The record does not indicate that he ever furnished another home for plaintiff and the young child of the parties.

On August 23, 1948, plaintiff brought suit against Irvine, asking for a decree of divorce and other relief incident thereto. A property settlement was executed by the parties, dated August 24, 1948. The agreement recited the pendency of the divorce action, provided for custody of the minor child by

plaintiff, and stipulated that Irvine should pay $7 per week for the support of said child. It was further agreed that Irvine should have as his sole and separate property the vendee's rights under the land contract executed in 1945, and that plaintiff should execute a quitclaim deed of her interest therein, subject to her right to remain in the home so long as she was unable to find another place in which to live. Other stipulations in the agreement are not material in the instant controversy.

The property settlement was filed in the pending divorce action. A pro confesso decree of divorce was granted plaintiff on October 23, 1948, interlocutory because of the child and to become final after 6 months from said date. The provisions of the agreement were incorporated in the decree, the approval of the court being thereby indicated. Plaintiff executed a quitclaim deed of her interest in the property, said deed being dated August 23, 1948, one day prior to the date appearing on the property settlement, and delivered the instrument to Irvine. Defendant herein claims that such deed was turned over to her by Irvine on the day on which it was dated. It is a fair conclusion that the deed was executed in accordance with the understanding and agreement of the parties, and that its purpose was to carry out, in part, the settlement on which the parties had agreed. The provisions of the interlocutory decree of divorce are significant in this respect.

On February 11, 1949, Irvine delivered to the vendors his copy of the land contract dated October 30, 1945, and a new contract was executed covering the property, the purchase price designated therein being the balance due at the time on the surrendered contract. Irvine and his former wife, Marie E. Irvine, defendant and appellant herein, were named as the vendees jointly and with rights of survivorship. The record discloses that following the issu-

ance of the interlocutory decree Irvine and defendant were on friendly terms, the latter claiming that she loaned money to him to enable him to meet his obligations.

Prior to the date fixed for the interlocutory decree to become final plaintiff filed her petition to set it aside, or modify it, asking also for leave to amend her bill of complaint with reference to allegations therein concerning the matters of property and alimony. On hearing the petition was granted. Subsequently thereto, on August 24, 1949, a stipulation was entered into between plaintiff and Irvine reciting that the parties had become reconciled. As a result an order was entered by the court on September 6, 1949, declaring the interlocutory decree vacated, and the parties resumed marital relations. Further difficulties interrupted the continuance of such relations for an interval of time but the parties were, it appears, living together in their home as husband and wife for several weeks preceding the death of Irvine.

Under date of September 1, 1949, Irvine executed to defendant a promissory note in the sum of $500 on which he agreed to make payments of $10 per week beginning September 15th of the same month. On the same day that the note was executed defendant signed and acknowledged a quitclaim deed to Irvine of the property that was being purchased under the land contract. It is her claim that the original deed remained in her possession, that she kept it because Irvine owed her money. However, she signed a carbon copy, which was not witnessed or acknowledged but which was delivered to Irvine. Subsequently the latter signed a paper, dated May 9, 1950, reciting his liability to defendant for $500 for money advanced during "the past 7 months or more" and agreeing to make payments on the obligation at the rate of $15 per week. The record does not indi-

cate that defendant loaned money to Irvine in excess of the total which he, by these instruments in writing, agreed to pay.

Following the death of Irvine, plaintiff remained in the home, and, as before noted, was appointed administratrix. For the first 3 months after Irvine's death defendant made the payments on the contract. Thereafter such payments were made by the plaintiff. Proceeding on the theory that she was the sole owner of the vendee's equity under the contract and entitled to possession of the property, defendant served on plaintiff a notice to vacate and thereafter instituted proceedings before a circuit court commissioner to obtain possession. Thereupon plaintiff brought suit to enjoin the prosecution of the summary proceeding, seeking also a decree that the vendee's interest under the contract was the sole property of Irvine at the time of his death, that it, in consequence, belonged to his estate, and that she as the widow was entitled to certain statutory rights therein.* Following the trial, decree was entered in plaintiff's favor as administratrix of the estate, granting the injunctive relief sought, and further declaring that defendant had no interest in the property and that the original contract between Mr. and Mrs. Sandel, as vendors, and Charles F. Irvine, as vendee, was reinstated and confirmed, leaving the vendee's interest in the estate of Irvine. From such decree defendant Marie E. Irvine has appealed. The circuit court commissioner before whom the summary proceeding was instituted was made a defendant but has not joined in the appeal.

The trial judge came to the conclusion that the quitclaim deed executed by plaintiff to her husband, incident to the property settlement following the bringing of the divorce action, was nullified by the

* See CL 1948, § 558.1 et seq. (Stat Ann § 26.221 et seq.).—REPORTER.

subsequent reconciliation of the parties, their resumption of marital relations, and the dismissal of the case. The effect of such a reconciliation on an agreement made in contemplation of the granting of a decree of divorce was considered by this Court in *Knapp* v. *Knapp,* 95 Mich 474, where it was said:

"The testimony shows that the parties became reconciled, and lived together for a time, after coming to Michigan. Under many authorities this avoided the contract, and she became entitled to her former rights. Story, Equity Jurisprudence, §§ 1427, 1428; *Shelthar* v. *Gregory,* 2 Wend (NY) 422; *Kehr* v. *Smith,* 20 Wall (87 US) 31 (22 L ed 313); *Carson* v. *Murray,* 3 Paige (NY) 483, 501.

"We therefore conclude that the defendant was entitled to her full rights in her deceased husband's property, under the law of Michigan."

In *Hagerty* v. *Union Guardian Trust Co.,* 258 Mich 133 (85 ALR 417), the Court, because of the facts involved, did not apply the general rule as announced in the *Knapp Case* but referred to it with approval, and also cited 40 ALR 1227 *et seq.* In such annotation it is said:

"Where husband and wife have made a separation agreement and thereafter become reconciled and resume cohabitation, it is said, generally, that the effect is to annul the agreement."

In support of the conclusion numerous decisions are cited, including the *Knapp Case, supra.* We think the general rule may properly be applied in the instant case. The facts do not otherwise indicate. The issue was correctly determined by the trial court.

It clearly appears that Irvine established a homestead interest in the property in question, subject to the contract. The nature of his interest did not preclude such action. A homestead may be established

in property of which one claiming such interest is in possession under a contract of purchase. *Kleinert* v. *Lefkowitz,* 271 Mich 79, 90; *Walker* v. *Woods,* 308 Mich 24, 30. Under the facts in the instant case Irvine's homestead rights were at all times in existence during the period between his marriage to plaintiff and his death. The property was her home and that of the child of the parties. The fact that an interlocutory decree was issued, which never became final, does not alter the situation in this respect. Under the provisions of the Michigan Constitution (1908), art 14, § 2, it was not within the power of Irvine to convey the homestead, or any part or portion thereof, to defendant, without the signature of his wife. See, also, CL 1948, § 623.74 (Stat Ann 1951 Cum Supp § 27.1573). The application of the constitutional restriction on the alienation of the homestead by a husband and the purpose of the homestead exemption generally were discussed by this Court in *Boman* v. *Wolverine Power Co.,* 268 Mich 59.

The attempted surrender by Irvine of the original contract, and the execution of a new contract, designating himself and defendant as joint vendees, were parts of the same transaction. The purpose at the time was presumably to give defendant an interest in the property. The suggestion is made, based on the testimony of defendant on the trial, that the transaction was carried out in order to give her security for money loaned to Irvine. However, whether it was sought to make a conveyance or to create a lien the result is the same. The property was Irvine's homestead, and he could not accomplish either result without the participation of his wife. Defendant acquired no interest in the property which she now claims to own.

The trial judge came to the further conclusion, as appears from his opinion, that the quitclaim deed ex-

ecuted by defendant on September 1, 1949, operated to pass or release any interest that she may have had or claimed in the property. It is true that she retained in her possession the original instrument, which was signed, witnessed and acknowledged. However, she also signed a carbon copy, which was not witnessed or acknowledged but which was delivered to Irvine. We find no satisfactory explanation in the record as to the purpose of the delivery of the signed copy if it was not intended thereby to transfer the interest that she claimed to have. It is well settled by prior decisions of this Court that an instrument of conveyance is good as between the parties even though not executed with such formalities as to permit it to be recorded. See *Kerschensteiner* v. *Northern Michigan Land Co.*, 244 Mich 403, 417, and prior decisions there cited. The fact that, coincident with the preparation of the deed, defendant was given a promissory note by Irvine in the sum of $500 is not without significance as to the intent of the parties to the transaction. We think the conclusion of the trial judge is fully supported by the record.

The decree is affirmed. Plaintiff may have costs.

DETHMERS, C. J., and ADAMS, BUTZEL, BUSHNELL, SHARPE, and REID, JJ., concurred.

BOYLES, J., did not sit.