PRUDENTIAL INSURANCE COMPANY
OF AMERICA *v.* IRVINE.

1. INSURANCE—DIVORCE—CHANGE OF BENEFICIARY.

Man insured under a life insurance policy who was divorced
by a decree terminating wife's rights in the insurance and
giving insured the sole and exclusive right to the policy had
the right thereafter to change the beneficiary but only in the
manner provided for in the policy (CL 1948, § 552.101).

2. SAME—DIVORCE—REDESIGNATION OF WIFE AS BENEFICIARY.

Divorced wife who remained the nominal beneficiary under group
life insurance certificates *held*, not entitled to proceeds thereof,
where evidence fails to show that insured had affirmatively re-
designated her as beneficiary after the divorce in accordance
with the terms of the policy (CL 1948, § 552.101).

3. SAME—CHANGE OF BENEFICIARY—SUBSTANTIAL COMPLIANCE WITH
POLICY.

There must be substantial compliance with the terms of an
insurance policy in order that a change of beneficiary there-
under be effected.

4. SAME—DEATH OF INSURED—BENEFICIARY'S RIGHTS.

The rights of the named beneficiary under an insurance policy
cannot be affected by any act of the insurer subsequent to the
death of the insured.

5. SAME—GROUP LIFE CERTIFICATES—DIVORCE—WIDOWS.

Employee's widow was entitled to proceeds of group life in-
surance certificates, where employee had been divorced from
named beneficiary without having affirmatively redesignated
former wife or anyone else pursuant to terms of the policy
(CL 1948, § 552.101).

REFERENCES FOR POINTS IN HEADNOTES

[1–5] 29 Am Jur, Insurance §§ 1309, 1314 *et seq.*
[1–5] Divorce of insured and beneficiary as affecting the latter's
right in life insurance. 52 ALR 386; 175 ALR 1220.

6. COSTS—INSURANCE—INTERPLEADER.

> No costs are allowed either defendant. widow or deceased insured's divorced wife in insurers' interpleader suit to determine right to proceeds of policies, where costs are allowed plaintiff insurers.

Appeal from Kent; Souter (Dale), J.   Submitted June 5, 1953.   (Docket No. 57, Calendar No. 45,866.) Decided November 27, 1953.

Bill of interpleader by the Prudential Insurance Company of America and Equitable Life Assurance Society of the United States against Doris D. Irvine. individually and as administratrix of the estate of Charles F. Irvine, deceased, Terry Lee Irvine and Marie E. Irvine to determine the right to proceeds of life insurance policy.   Decree for defendant Marie E. Irvine.   Defendants Doris D. and Terry Lee Irvine appeal.   Reversed.

*Floyd H. Skinner* and *Alphonse Lewis, Jr.,* for defendants Doris D. and Terry Lee Irvine.

*Linsey, Shivel, Phelps & Vander Wal,* for defendant Marie E. Irvine.

BUTZEL, J.   This is a bill of interpleader, brought by the Prudential Insurance Company and the Equitable Life Assurance Society of the United States, plaintiffs, against Doris D. Irvine, individually and as administratrix of the estate of Charles F. Irvine, deceased, Terry Lee Irvine, her son, and Marie E. Irvine, defendants, to determine who is entitled to the proceeds of a certain group life insurance policy, which they had written on the life of Charles E. Irvine.   Defendants Doris D. Irvine and Marie E. Irvine are the litigants in *Irvine* v. *Irvine,* 337 Mich 344, involving rights to real property.  The attorneys for the respective defendants in this case have stip-

ulated that in deciding it we may also refer to the testimony in the *Irvine* v. *Irvine* case. The 2 cases were heard and decided by separate judges in the court below, but, since we hear chancery cases *de novo*, we have studied both records in order to arrive at a fuller understanding of the facts.

In the spring of 1947, Charles F. Irvine, as an employee of the Borden Company, applied for and obtained a group life insurance policy certificate from plaintiffs in the amount of $3,500. A group policy had been issued to the Borden Company. The certificate of insurance named "Marie E. Irvine—wife" as beneficiary. In September, 1947, Marie obtained a divorce from Charles, the decree providing in part that:

"It is further ordered, adjudged and decreed that all rights of either party in any policy or contract of life insurance, endowment or annuity upon the life of the other is hereby terminated and each party shall have the sole and exclusive right in any and all policies or contracts of life insurance, endowment or annuity upon his or her life."

Thereafter, on April 1, 1948, Charles, who at that time was a single man, increased the amount of this policy to $4,000, but he made no change whatsoever in his designation of beneficiary. In June of 1948, he married Doris D. Irvine. Some time prior to the divorce between Charles and Marie, Doris had given birth to Terry Lee, who was born out of wedlock, but whose paternity was acknowledged by Charles. Marie testified that she divorced Charles at his request, so that he might legitimatize the child. It may also be noted, however, that following her divorce from Charles, Marie married one James Kelly in May, 1948, although she later divorced him in July or August of the same year. The marital bliss of the marriage between Charles and Doris was apparent-

ly not long lived either for on August 23, 1948, Doris commenced a divorce suit against Charles. She obtained an interlocutory decree, but shortly before it would have become final she filed a petition to set it aside. She also obtained leave to amend her bill of complaint regarding property and alimony. During the summer of 1949, a reconciliation was effected between Doris and Charles and upon stipulation of the parties an order was entered on September 6, 1949, vacating the interlocutory decree and marital relations were resumed. However, some time in November of that year, Charles moved out again, and on January 20, 1950, Doris instituted suit for separate maintenance against him. This suit was dismissed in May, 1950, again upon stipulation of the parties, and they apparently remained together from then until he again left her the following July. He returned in November and remained with Doris from then until the time of his death on January 19, 1951. It appears that throughout his marriage to Doris, a rather close friendship was continued between Charles and Marie, and that during at least part of his last 2 absences from Doris he had been staying at Marie's home, as she produced memoranda of his payments to her for room and board during these intervals. There was also evidence that at the time of his death he was indebted to Marie in the sum of $1,500. He had never made any changes in the designation of beneficiary of the insurance.

Marie claims that Charles intentionally left her as the named beneficiary on the policy certificates and that shortly before his death he had, before witnesses, affirmatively designated her as beneficiary; that the provisions of CL 1948, § 552.101 (Stat Ann 1951 Cum Supp § 25.131), when coupled with his affirmative designation gives her the right to the insurance proceeds. Marie's daughter and son-in-

law, Helen and August Sipma, both testified to a meeting which they witnessed between Marie and Charles about 2 weeks before his death. The daughter testified that 1 evening about 2 weeks prior to Charles' death she and her husband had driven Marie over to the house where Charles was then living with Doris; that they parked in front of the house and Charles came out and got into the rear seat of the car (Marie, Helen and August remaining in the front seat); that after a short conversation in which Charles said that he was feeling "pretty punk" and afraid that he would have to go back to the hospital for more X-rays, he handed the insurance policy certificates to her mother saying:

" 'I want you to have this, Marie,' he said, and 'You hang onto it,' he said, and 'You, Helen and Gus, I want you to be sure that you are witnessing the fact that I am giving this to your mother.' "

She testified that he also said:

" 'If it is necessary,' he said, 'something should happen to me,' he said, 'I want you to fight for it, and be sure and hang onto it.' "

On redirect examination she testified:

"We lived only a block or 2 from him, and he talked about his insurance and the house and said he wanted mother to have those things. He said: 'I have never changed this and don't want it ever changed.' By 'this,' I mean the beneficiary. I heard him say that quite a while before his death when he would come down and help us. On those occasions he said he didn't want the beneficiary changed."

August Sipma's testimony was substantially the same as his wife's in all particulars. Marie also testified, over objection, to the meeting in the car in front of Charles' home. Her testimony was objected to as being equally within the knowledge of the de-

ceased, and therefore inadmissible under CL 1948, § 617.65 (Stat Ann § 27.914), but the trial judge held that the meeting was adequately proven without her testimony.

Doris contends that any rights which Marie might have had to the proceeds of the policy were terminated by the provisions of the decree of divorce (quoted *supra*) between her and Charles. Doris further claims that she is entitled to the insurance proceeds under the following provision of the policy:

"BENEFICIARY: Any part of the insurance for which there is no beneficiary designated by the employee or surviving at the death of the employee will be payable in a single sum to the first surviving class of the following classes of successive preference beneficiaries: The employee's (a) widow or widower; (b) surviving children; (c) surviving parents; (d) surviving brothers and sisters; (e) executors or administrators."

Regarding Marie's claim that subsequent to their divorce, Charles had affirmatively designated her as beneficiary of the policy, Doris contends that there was at most an intention to make Marie the beneficiary, but it was invalid and of no effect because not executed in accordance with the policy's conditions to the change of beneficiary, *i.e.*:

"Any employee may from time to time while insured hereunder change the beneficiary by a written request signed by the employee and filed with the employer, but such change shall take effect only upon its entry by the employer on the insurance records maintained by it in connection with the insurance under this policy."

The very possibility of such a meeting as was described by Helen and August Sipma was emphatically denied by Ronald Mosies, Doris' son by a prior marriage. He testified that Charles was very

ill for several months prior to his death; that during the last 2 months before his death was in bed most of the time; that since Charles was having spells he had watched over him very closely during this time and especially from the first of January on; that Charles was under his constant observance during all the evenings of January; that there was no way that Charles could have left the house during any of these evenings without his (Ronald's) knowledge; and that he knew that Charles did not go outside and meet anyone in a car parked in front of the house about 2 weeks before his death. The testimony was thus in sharp conflict on the point, but the trial judge found that the meeting took place as testified to by Helen and August Sipma.

The trial judge based his decision largely upon his construction of CL 1948, § 552.101 (Stat Ann 1951 Cum Supp § 25.131), which provides in part that:

"Hereafter every decree of divorce shall determine all rights of the wife in and to the proceeds of any policy or contract of life insurance, endowment or annuity upon the life of the husband in which she was named or designated as beneficiary, or to which she became entitled by assignment or change of beneficiary during the marriage or in anticipation thereof, whether such contract or policy was heretofore or shall hereafter be written or become, and unless otherwise ordered in said decree such policy or contract shall thereupon become and be payable to the estate of the husband or to such named beneficiary as he shall affirmatively designate."

It was the judge's opinion that under the terms of the statute the insurance became payable to the insured's estate or to such person as he might affirmatively designate, and that he had no right to construe the statute in such a manner as to require that the insured designate his choice of beneficiary in the manner provided in the policy, nor even to construe

the statute as requiring that the affirmative designation be in writing. He also pointed out that the provisions of the policy concern only the changing of the beneficiary, whereas the statute speaks of a designation. He held that any affirmative, unambiguous designation of beneficiary was sufficient under the statute, that the designation need not be in writing, and he decreed that Marie was entitled to the insurance proceeds, whereupon Doris brought this appeal.

The divorce decree, which followed the terms of the statute, terminated Marie's rights in the insurance and gave decedent the sole and exclusive right to the policy. He thereupon had a right to change the beneficiary as he saw fit, but only in the manner provided for in the policy. We deem the trial judge's distinction between designation and change of beneficiary as one without a substantial difference. Between the time that Marie's rights were terminated by decree and statute and the time of his death, insured had made no new designation of beneficiary by any kind of written instrument, as required by the insurance contract, which further provided that the written notice should be filed with the employer and take effect only upon its entry by the employer upon the insurance records maintained by it in connection with the insurance under its group policy. The wisdom of such a provision is amply demonstrated by the facts in the instant case. Some equities do favor Marie. She had been married to Charles for 16 years and it is claimed that she divorced him solely in order to allow him to legitimatize Doris' child, of whom he was the father. He remained on very friendly relations with Marie subsequent to their divorce. It is of further interest to note that at some time, not shown by the records, Charles took out 2 additional policies of $500 each, one payable to Terry Lee, the infant child, and the other to Marie. It is

a matter entirely of speculation whether he took the new policy out for Marie because he thought she had lost her right in the contested insurance through the divorce decree. There is testimony which, although controverted and coming from not wholly disinterested witnesses whom the trial judge believed, to the effect that prior to his death Charles handed the policy over to Marie and told her to fight for it. On the other hand, there is no testimony at all to show that he made even the slightest effort to properly designate or rename Marie as beneficiary after her right in the insurance had been terminated and the policy was vested solely in him. It is not even claimed by Marie that he was prevented from making such designation as he saw fit. We have had occasion to pass upon the question of whether the beneficiary can be changed without a compliance with the requirements of the policy. Marie relies largely upon *John Hancock Mutual Life Insurance Co.* v. *Jedynak,* 250 Mich 88, in which futile efforts were made by the insured to obtain the policy from her beneficiary so that a change of beneficiary might be indorsed thereon in accordance with the policy requirements. We held as follows:

"The insurance company in interpleading the claimants and paying the money into court confessed liability, waived defenses, and submitted the issues between the contesting claimants to decision in accord with equitable principles. Under the policies, the insured had a right to change the beneficiaries. It is well settled that if the insured wanted to change the beneficiaries and endeavored, in a writing signed by her, to accomplish such purpose, and was only prevented by the original beneficiary refusing to turn over the policy and the declination of the insurer to grant her written request without production of the policy, a court of equity will accomplish the clear purpose of the insured and frustrate contrary designs. The insurer has waived its rule requiring

production of the policy for indorsement of change of beneficiary, and Anna LeVera cannot, in equity and good conscience, invoke the waived rule in aid of her design to frustrate change of beneficiary.

"What we have said is amply supported by authority. See *Quist* v. *Western & Southern Life Insurance Co.*, 219 Mich 406, and authorities there cited; *New York Life Insurance Co.* v. *Cook*, 237 Mich 303, and, also, *McDonald* v. *McDonald*, 212 Ala 137 (102 So 38, 36 ALR 761), for a full discussion of the subject and annotation of authorities."

This follows the general rule that where a bona fide effort has been made by the insured to change beneficiary in accordance with the insurance contract, but through *no fault* of the insured this could not be done, the courts have stepped in and made an equitable disposition of the proceeds. Such, however, is not the case here. Decedent at all times had possession of his policy; he knew enough about the insurance so as to take out new policies, as well as to increase the amount. The question has been thoroughly and carefully discussed in *Dogariu* v. *Dogariu,* 306 Mich 392, 405, where many authorities are cited. In coming to our conclusion there, we stated:

"The above authorities establish the rule that where the policy of insurance provides the method and procedure for changing the designated beneficiary, there must be at least substantial compliance with such provisions to effect the change. The present case does not fall within the exception that the court will recognize a change of beneficiary where the insured has substantially complied with the policy's requirement, and completion is prevented by reason of the policy's being lost, mislaid or unobtainable. Such exception to the general rule is stated in *Quist* v. *Western & Southern Life Insurance Co.*, 219 Mich 406, 410, as follows:

" 'Excuses for not producing the policy or certificate have been recognized in this State. In *Grand*

*Lodge, A.O.U.W.,* v. *Child,* 70 Mich 163, the certificate was lost. In *Grand Lodge, A.O.U.W.,* v. *Noll,* 90 Mich 37 (15 LRA 350, 30 Am St Rep 419), the certificate was lost or mislaid. In *Grand Lodge, A.O.U.W.,* v. *Kohler,* 106 Mich 121, the original beneficiary had the certificate in her custody and refused to deliver it.' * * *

"The payment of the proceeds of the policies into court in pursuance of stipulations and decrees of interpleader did not affect the claim of the widow as beneficiary, because her right to the insurance became absolute upon the death of her husband. *Knights of Maccabees of the World* v. *Sackett,* 34 Mont 357 (86 P 423, 115 Am St Rep 532); *Reid* v. *Durborow* (CCA) 272 F 99; *Ireland* v. *Ireland,* 42 Hun (49 NY Sup), 212. In 2 Couch on Insurance, § 308, it is stated, p. 828:

" 'The rights of the named beneficiary vest at the instant of the insured's death, and cannot be affected by any subsequent act of the insurer.'

"One of the benefits of life insurance is that, in most instances, it is paid to the designated beneficiary with reasonable promptness after the death of the insured. To hold that, without substantial compliance with the provisions of the policy relative to change of beneficiary, an insured, by his will alone, could change such beneficiary, would open the door to possible fraud and irregularities and would create uncertainty tending to interfere with the customary practice of prompt payment. We are convinced that in the absence of a showing of substantial compliance with the policy's requirements, the will of the insured, standing alone, should not effect a change of beneficiary."

We are more convinced of the wisdom of this rule after the presentation of the very involved relationships between the parties in the instant case. We can readily appreciate the difficulties the circuit judge had, as they were shared by us.

The decree, so far as the rights of Marie are concerned, is reversed. With her eliminated there is no beneficiary designated, and, therefore, in accordance with the provisions of the policy hereinbefore quoted the insurance should be paid to Doris. Having already paid the insurance into court, plaintiffs are released from liability and allowed costs and attorneys' fees, as provided in the decree of the trial court, but the decree is otherwise reversed so as to provide that the insurance shall be payable to Doris as Charles' widow. No costs except to plaintiffs.

CARR, BUSHNELL, SHARPE, and REID, JJ., concurred with BUTZEL, J.

DETHMERS, C. J. (*concurring in part*). I concur in the result and agree with the reasoning in Mr. Justice BUTZEL'S opinion, except insofar as it predicates the holding that there was no effective change or designation of beneficiary in favor of Marie, after the decree of divorce, on noncompliance with insurance policy requirements relative to manner of making such change. It is my view that the policy provision in that regard was inserted for the sole benefit of the insurers, can be invoked by them alone, and is of no avail to Doris as against Marie to defeat an oral assignment of interest or change or designation of beneficiary in favor of Marie, made by assured in his lifetime, if it was otherwise valid and enforceable at law except for the policy provision. See *Kaczmarck* v. *La Perriere,* 337 Mich 500, and cases therein discussed; also, *Quist* v. *Western & Southern Life Insurance Co.,* 219 Mich 406. Not in point, it seems to me, is *Dogariu* v. *Dogariu,* 306 Mich 392, and cases therein considered, holding ineffective an attempt to change beneficiary by testamentary disposition contrary to policy provision because, as stated in the opinion therein, the rights of the named beneficiary

had taken effect at the moment of assured's death and could not thereafter be affected by the provisions of a will. The testator could not give by will what he did not possess at death. The situation in the instant case differs in that Marie claims a completed transaction in the nature of a gift *inter vivos* effective during assured's lifetime.

I concur in Mr. Justice BUTZEL's result, however, by concluding that, as a matter of fact, the transaction claimed by Marie, but denied by Doris, is not established by the record and, further, by holding that the testimony in that regard in behalf of Marie, if accepted as true, fails to establish that assured accomplished any legal change of rights in respect to either Marie or Doris, entirely aside from the mentioned provision of the policy, inasmuch as a mere intent or expression of intent by assured to effect a change would have been insufficient. *Reed* v. *Metropolitan Life Insurance Co.,* 269 Mich 26, and *Johnson* v. *Agricultural Life Insurance Co.,* 225 Mich 331.

ADAMS, J., concurred with DETHMERS, C. J.

BOYLES, J., did not sit.