**NORTHEASTERN LIFE INSURANCE COMPANY OF NEW YORK, a New York Corporation, Plaintiff,**

v.

**Sophia CISNEROS and Bonnie B. Ciorba (formerly Bonnie Carruthers), Defendants.**

No. 28329.

United States District Court
E. D. Michigan, S. D.

Oct. 24, 1966.

Edward B. Harrison, Fischer, Sprague, Franklin & Ford, Detroit, Mich., for plaintiff.

Ralph H. Adams, Detroit, Mich., for Sophia Cisneros.

Charles R. King, Detroit, Mich., for Bonnie B. Ciorba.

## OPINION

FREEMAN, District Judge.

This is an interpleader action brought by an insurance company which had issued two policies on the life of one Robert Carruthers. Each of the defendants has made a claim to the amount due on these contracts, a total of $19,081.[1] Plaintiff has disclaimed any interest in the funds and leaves the two defendants to litigate their respective rights.

The defendants agree on the following facts. Robert Carruthers and Sophia Cisneros began to cohabit sometime prior to June 1, 1960, the date on which the two policies in dispute were purchased by Carruthers. The schedules of beneficiaries attached to these policies then read: "Sophia Cisneros, friend, otherwise, to Bonnie Carruthers." Bonnie Carruthers is the same person as defendant Ciorba. No change was made in the listed beneficiaries during the lifetime of Robert Carruthers. Robert and Sophia Cisneros were legally married on February 14, 1961, but were divorced on July 10, 1963.[2] Both defendants also admit that at the time of the divorce, the chancery court made no provision relative to the interests of Cisneros in the two insurance policies. Robert Carruthers died on January 31, 1966. There are two points on which the defendants disagree. Cisneros contends that she became the primary beneficiary under both policies by virtue of a contract between herself and Carruthers by which he promised to make her the beneficiary in return for her making certain loans to him. This the defendant Ciorba denies. Furthermore, Cisneros alleges that her interest in the policies as beneficiary was not received "in anticipation of mar-

1. This amount represents, not the face values of the policies, but rather their cash values on the date of Robert Carruthers' death. Under the terms of the policies, the face values were not payable unless he died after June 1, 1969; and such was not the case.

2. After the divorce, defendant Cisneros, who during the marriage, of course, had been Mrs. Carruthers, retook the name Cisneros.

riage." This Ciorba also denies. Defendant Cisneros seeks summary judgment; defendant Ciorba prays that Cisneros' claim be dismissed.

■■ The controversy centers around the following statute, M.S.A. § 25.131, Comp.Laws 1948, § 552.101, the relevant portion of which reads as follows:

> "Hereafter every decree of divorce shall determine all rights of the wife in and to the proceeds of any policy or contract of life insurance, endowment or annuity upon the life of the husband in which she was named or designated as beneficiary, or to which she became entitled by assignment or change of beneficiary during the marriage or in anticipation thereof, whether such contract or policy was heretofore or shall hereafter be written or become effective, and unless otherwise ordered in said decree such policy or contract shall thereupon become and be payable to the estate of the husband or to such named beneficiary as he shall affirmatively designate * * *."

This provision has been discussed by the Michigan Supreme Court on only a few occasions. The sole relevance of these decisions to the present case lies in the fact that they have made clear what the language of the statute already states is the effect of a divorce court's failure to make provision in the divorce decree with reference to a policy on a husband's life of which the wife is the beneficiary: her interest is terminated. McCoy v. McCoy, 317 Mich. 478, 27 N.W.2d 62 (1947); Minnesota Mut. Life Ins. Co. v. Hendrick, 316 Mich. 253, 25 N.W.2d 189 (1946).[3] That court has not decided whether this general principle would in any way be affected by Cisneros' ability to prove either that the policies in question were purchased otherwise than in anticipation of marriage or that they were taken out with Cisneros as primary beneficiary pursuant to a valid con-

tractual agreement between her and Robert Carruthers.

■ Much of the discussion in the briefs is devoted to the anticipation of marriage question. Cisneros points to Ciorba's deposition in which she admits that she does not know whether the policies were taken out with Cisneros as primary beneficiary in anticipation of marriage. However, Ciorba argues in her brief that the fact that the policies were purchased at a time when Carruthers and Cisneros were cohabiting, and the fact that the couple was legally married just a few months after the policies had been taken out, leave a strong inference that the contracts were purchased in anticipation of marriage. The fact of cohabitation and the comparatively short interval between the purchase of the policies and the marriage are insufficient to enable the Court to rule as a matter of law that the policies were taken out in contemplation of marriage.

■ However, the crucial question in this case was not discussed by either party. It is whether the Michigan statute affects rights under policies wherein a since divorced wife was *originally* made the beneficiary *only* if these policies were taken out during or in anticipation of marriage. The answer must be in the negative. Had the comma which is located in the tenth line of the quotation after the word "thereof" been placed after the word "beneficiary" in the ninth line, the answer would be different. However, as the language stands, the phrase "during the marriage or in anticipation thereof" modifies only the preceding portion of the one clause contained within the commas in the seventh and tenth lines. Therefore, evidence that a wife's beneficial interest was obtained during or in anticipation of marriage is crucial only if the interest arose by virtue of an assignment or a change of beneficiary. This construction

---

3. The fact that an insured husband makes no effort to strike the divorced wife's name as the designated beneficiary but permits her to continue as beneficiary of record even after the divorce makes no difference. See Prudential Ins. Co. of America v. Irvine, 338 Mich. 18, 61 N.W.2d 14 (1953).

leaves only one modifying word to be considered in connection with beneficial interests of wives obtained by designation as beneficiaries at the time policies were purchased. Unfortunately for Cisneros, that word is "any." While it may be argued that there is no valid policy reason for affording different treatment to a wife who became a beneficiary under a policy when the policy was issued and one who got such an interest because of a change of beneficiary, it is equally clear that rights obtained during marriage should not receive less kindly treatment than those acquired during concubinage. If it is proper to depart from the strict wording of the legislation to make the critical phrase modify more than it must, it is just as appropriate in the course of doing so to deviate from a literal reading of the provision to hold that by saying "during marriage," as it did in this phrase, the legislature meant to refer to any period of cohabitation which eventually is legally terminated by a divorce, regardless of whether that period commenced with a formal ceremony. In short, whether the statute is viewed strictly or whether it is seen in the light of probable legislative intent, Cisneros has not shown that she is entitled to the proceeds of the policies in controversy.

Neither party has brought to the Court's attention any case indicating that the above conclusion is invalid in light of Cisneros' allegations that she has a beneficial interest in Carruthers' policies because of a contractual arrangement between him and her. However, Cisneros admits by implication that the contract is immaterial when she says in her brief: "we must look to the Statute and the terms thereof and *be guided by such terms alone,* since we have no cases or stare decisis law to guide us in the State of Michigan." The statute makes no distinction among beneficial interests obtained by gift, purchase or contract.

The statute says that the divorce court will determine "*all* rights of the wife in and to the proceeds of *any* policy" and that, if the court fails to do so, "such policy" will become payable otherwise than to the wife.

If one disregards Cisneros' admonition and peeks behind the language of the provision in an attempt to glean the probable legislative intent, he reaches the same conclusion. The provision is part of a more inclusive statute entitled:

"AN ACT to provide that decrees of divorce shall make provision in satisfaction of the *claims* of the wife in the property of the husband and in contracts of insurance. * * * " (Emphasis supplied.)

This heading can only mean that the legislature thought that it was enacting a law which would make it incumbent upon a wife who feels that she is entitled to an interest in any property of her husband for any reason to speak up at the time of divorce in much the same way that a contract creditor of a bankrupt must assert his rights during the bankruptcy proceedings or be forever barred by discharge from doing so. The wisdom of such an arrangement is particularly evident in the case of insurance policies; for if it were not so, a second wife, who until the husband's death felt confident about the future in the belief that she was the beneficiary of his insurance, could, upon his demise, suddenly find herself facing a claim from the former wife to the effect that the latter's status as beneficiary of the insurance was taken out of the operation of the statute by contract.

For these reasons, Cisneros' motion for summary judgment must be denied and Ciorba's motion to dismiss Cisneros' claim to the proceeds of the insurance policies will be granted. An appropriate order may be submitted.