STATE TREASURER v SNYDER

Docket No. 298554. Submitted September 13, 2011, at Detroit. Decided
November 29, 2011, at 9:00 a.m.
  The State Treasurer brought an action in the Berrien Circuit
  Court against Wayne Snyder, a prisoner subject to the jurisdic-
  tion of the Michigan Department of Corrections, under the
  State Correctional Facility Reimbursement Act (SCFRA), MCL
  800.401 *et seq.*, to recover, as reimbursement for the cost of his
  incarceration, 90 percent of the $2,500 Snyder received as the
  beneficiary of his mother's life insurance policy. Snyder re-
  sponded by filing a disclaimer of property interest pursuant to
  the Disclaimer of Property Interests Law (DPIL), MCL
  700.2901 *et seq.*, purporting to disclaim any interest he had in
  the proceeds of the life insurance policy. Snyder asserted that he
  was entitled to summary disposition because of the disclaimer.
  The court, John E. Dewane, J., disagreed, concluding that
  Snyder could not disclaim his interest under the DPIL because
  he knew that the insurance proceeds had been deposited into his
  prison account and had accepted the proceeds before filing his
  purported disclaimer. The court ordered that 90 percent of the
  $2,500 be applied toward reimbursing the state under the
  SCFRA. Snyder appealed by delayed leave granted.
      The Court of Appeals *held*:
      The SCFRA authorizes the filing of a complaint in the circuit
  court to secure reimbursement from the assets of a prisoner for
  the expenses incurred by the state for the cost of care of the
  prisoner during the entire period of his or her incarceration.
  Under the SCFRA, "assets" include property, tangible or intan-
  gible, real or personal, belonging to or due a prisoner from any
  source whatsoever. Thus, proceeds a prisoner is due from a life
  insurance policy are considered an asset for purposes of the
  SCFRA. Under the DPIL, a person may disclaim a disclaimable
  interest, which the DPIL defines as including property and the
  right to receive property. However, the right to disclaim a
  property interest is not absolute; it is barred to the extent
  provided by other applicable law. Under the SCFRA, the attor-
  ney general may use any remedy, interim order, or enforcement

procedure allowed by law or court rule to prevent a prisoner from disposing of assets, and the circuit court presiding over an SCFRA action may appoint a receiver to protect and maintain assets pending resolution of the action. The authority conferred on the attorney general and the circuit court suggests a legislative intent to bar a prisoner from alienating his or her ownership interest in any assets that may be subject to confiscation under the SCFRA. Thus, a prisoner may not avoid the confiscation of his or her assets by disclaiming interest in the assets pursuant to the DPIL. Rather, assets are subject to the SCFRA if they belong to, or are due to, the prisoner. In this case, once Snyder's mother died, the life insurance proceeds became due to Snyder and were thus assets subject to the SCFRA. Snyder could not avoid his liability under the SCFRA through disclaimer of the proceeds, and the trial court properly declared that the disclaimer was void, albeit for the wrong reason.

Affirmed.

PRISONS AND PRISONERS — REIMBURSEMENT OF COSTS OF INCARCERATION — LIFE INSURANCE PROCEEDS — DISCLAIMERS OF INTEREST.

The State Correctional Facility Reimbursement Act (SCFRA) authorizes the filing of a complaint in the circuit court to secure reimbursement from the assets of a prisoner for the expenses incurred by the state for the cost of care of the prisoner during the entire period of his or her incarceration; under the SCFRA, "assets" include property, tangible or intangible, real or personal, belonging to or due a prisoner from any source whatsoever; proceeds a prisoner is due from a life insurance policy are considered an asset for purposes of the SCFRA; under the Disclaimer of Property Interests Law (DPIL), a person may disclaim a disclaimable interest, which the DPIL defines as including property and the right to receive property; however, the right to disclaim a property interest is not absolute; it is barred to the extent provided by other applicable law; under the SCFRA, the attorney general may use any remedy, interim order, or enforcement procedure allowed by law or court rule to prevent a prisoner from disposing of assets, and the circuit court presiding over an SCFRA action may appoint a receiver to protect and maintain assets pending resolution of the action; the authority conferred on the attorney general and the circuit court suggests a legislative intent to bar a prisoner from alienating his or her ownership interest in any assets that may be subject to confiscation under the SCFRA; thus, a prisoner may not avoid the confiscation of his or her assets by disclaiming interest in the assets pursuant to the

DPIL; rather, assets are subject to the SCFRA if they belong to, or are due to, the prisoner (MCL 700.2901 *et seq.*, MCL 800.401 *et seq.*).

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Richard A. Bandstra*, Chief Legal Counsel, and *Juandisha Harris*, Assistant Attorney General, for the State Treasurer.

Wayne Snyder *in propria persona.*

Before: RONAYNE KRAUSE, P.J., and CAVANAGH and JANSEN, JJ.

PER CURIAM. Defendant, Wayne Snyder, appeals by delayed leave granted an order holding that his purported disclaimer of life insurance proceeds was void and directing that 90 percent of those proceeds be paid to plaintiff, the State Treasurer, in partial reimbursement for the cost of defendant's incarceration as mandated by the State Correctional Facility Reimbursement Act (SCFRA), MCL 800.401 *et seq*. We affirm.

Defendant has been incarcerated since 1999 at a substantial cost to the state of Michigan and its citizens. Thus, when defendant received $2,500 as the beneficiary of his mother's life insurance policy, plaintiff filed a complaint against him under the SCFRA, seeking partial reimbursement for the costs associated with his incarceration. See MCL 800.404(1). Defendant responded to plaintiff's complaint by filing a disclaimer of property interest pursuant to the Disclaimer of Property Interests Law (DPIL), MCL 700.2901 *et seq.*, purporting to disclaim any and all interest in the proceeds of his mother's life insurance policy. Then defendant filed a motion for summary disposition pursuant to MCR 2.116(C)(10), arguing that dismissal of plaintiff's case was necessary because he had disclaimed his

interest in the insurance proceeds.[1] Plaintiff opposed the motion, arguing that defendant was barred by the SCFRA from disclaiming his interest in the insurance proceeds and, in the alternative, that he could not disclaim his interest under the DPIL because he had received the proceeds before he filed his purported disclaimer. See MCL 700.2910(1)(c).

The circuit court agreed with plaintiff, holding that defendant could not disclaim his interest under the DPIL because he knew that the insurance proceeds had been deposited into his prison account and had accepted the proceeds before filing his purported disclaimer. See MCL 700.2910(1)(c). Because defendant's disclaimer was void, the court ordered that 90 percent of the $2,500 be applied toward reimbursing the state as provided in SCFRA. A final order consistent with the court's opinion followed and the case was dismissed. Thereafter, defendant filed a delayed application for leave to appeal with this Court, which was granted. *State Treasurer v Snyder*, unpublished order of the Court of Appeals, entered December 13, 2010 (Docket No. 298554).

On appeal, defendant argues that he had the right to disclaim his interest in the insurance policy proceeds after being sued by plaintiff; therefore, the circuit court decision must be reversed. We disagree. Although the circuit court did not decide this issue involving statutory interpretation, it is an issue of law that was raised by the parties, the facts necessary for its resolution are present, and the issue is dispositive of defendant's appeal; therefore, we will consider and decide the issue.

---

[1] This motion was rejected by the court clerk for failure to pay the motion fee, but it was treated by the court as an answer to plaintiff's complaint and response to the order to show cause.

See *Michigan Twp Participating Plan v Fed Ins Co*, 233 Mich App 422, 435-436; 592 NW2d 760 (1999).

This Court reviews de novo issues of statutory interpretation as questions of law. *Griffith v State Farm Mut Auto Ins Co*, 472 Mich 521, 525-526; 697 NW2d 895 (2005). The primary goal of statutory interpretation is to ascertain and give effect to the legislative intent "that may reasonably be inferred from the statutory language itself." *Id*. at 526; see, also, *Frankenmuth Mut Ins Co v Marlette Homes, Inc*, 456 Mich 511, 515; 573 NW2d 611 (1998). "If the plain and ordinary meaning of the statutory language is clear, then judicial construction is neither necessary nor permitted." *Walters v Bloomfield Hills Furniture*, 228 Mich App 160, 163; 577 NW2d 206 (1998).

The SCFRA imposes a civil, statutory duty on prisoners to reimburse the state for the cost of their incarceration. *State Treasurer v Schuster*, 456 Mich 408, 419; 572 NW2d 628 (1998); *Auditor General v Hall*, 300 Mich 215, 221; 1 NW2d 516 (1942). Likewise, the SCFRA grants the state a statutory right to reimbursement of up to 90 percent of the value of a prisoner's assets. MCL 800.403(3); *State Treasurer v Sheko*, 218 Mich App 185, 188; 553 NW2d 654 (1996). That is, the SCFRA authorizes the filing of a complaint in the circuit court "to secure reimbursement, from the assets of a prisoner, for the expenses incurred by the state for the cost of care of the prisoner during the entire period of his incarceration." *Id*. at 187 n 1; see, also, MCL 800.404(1) and (8). "Assets" are defined by the SCFRA to include "property, tangible or intangible, real or personal, belonging to or due a prisoner . . . from any other source whatsoever . . . ." MCL 800.401a(a). Thus, proceeds a prisoner is due from a life insurance policy are considered an asset for purposes of the SCFRA.

In this case, however, defendant argues that the insurance proceeds that he was due after his mother died were not his "assets" within the meaning of MCL 800.401a(a) because he disclaimed his interest in the proceeds pursuant to the DPIL. MCL 700.2902(1) of the DPIL provides that a person "may disclaim a disclaimable interest in whole or in part." MCL 700.2901(2)(b) defines a "disclaimable interest" as including property and the right to receive property. The insurance proceeds involved here appear to be a disclaimable interest. But the right to disclaim is not absolute. MCL 700.2910(2) provides, for example, that the "right to disclaim is barred to the extent provided by other applicable law." Thus we turn to the issue whether defendant had the right to disclaim his interest in the insurance proceeds, i.e., whether his right to disclaim was barred by the SCFRA.

Under the SCFRA, if the attorney general "has good cause to believe that a prisoner has sufficient assets to recover not less than 10% of the estimated cost of care of the prisoner . . . the attorney general shall seek to secure reimbursement for the expense of the state of Michigan for the cost of care of that prisoner." MCL 800.403(2). After a complaint against the prisoner has been filed seeking reimbursement, "the court shall issue an order to show cause why the prayer of the complainant should not be granted." MCL 800.404(2). MCL 800.404(3) provides:

> At the time of the hearing on the complaint and order, if it appears that the prisoner has any assets which ought to be subjected to the claim of the state under this act, the court shall issue an order requiring any person, corporation, or other legal entity possessed or having custody of those assets to appropriate and apply the assets or a portion thereof toward reimbursing the state as provided for under this act.

However, "before entering any order on behalf of the state against the defendant, the court shall take into consideration any legal obligation of the defendant to support a spouse, minor children, or other dependents and any moral obligation to support dependents to whom the defendant is providing or has in fact provided support." MCL 800.404(5). Further, in seeking to secure reimbursement, the attorney general is empowered under MCL 800.404a(1) to "use any remedy, interim order, or enforcement procedure allowed by law or court rule including an ex parte restraining order to restrain the prisoner . . . from disposing of certain property pending a hearing on an order to show cause why the particular property should not be applied to reimburse the state as provided for under this act." A receiver may also be appointed, MCL 800.404a(2), but any judgment obtained under the SCFRA may not be executed against the prisoner's homestead, MCL 800.404a(3).

Review of the broad and mandatory language of the SCFRA reveals the Legislature's manifest intent to recover, when possible, the cost of prisoner incarceration by seeking and securing prisoner assets through any legal means necessary. As our Supreme Court noted in *Schuster*, 456 Mich at 418, "the plain and broad language of the reimbursement provisions at issue indicates a legislative intent to shift the burden of incarceration expenses to prisoners and from the taxpayers whenever possible." The Legislature's vigor in this endeavor is only tempered by its recognition of a prisoner's legal and moral obligations to support dependents, MCL 800.404(5), and the importance of a prisoner's homestead, MCL 800.401a(a)(*i*) and MCL 800.404a(3).

More particularly, the SCFRA (1) broadly defines a prisoner's "assets" that are subject to the reach of the

SCFRA, (2) empowers and commands the attorney general to secure the assets and seek reimbursement through those "sufficient assets," and (3) directs the presiding circuit court to consider the attorney general's claim, determine whether the prisoner "has any assets which ought to be subjected to the claim" and, if so, order reimbursement from those assets after consideration of a prisoner's legal and moral support obligations.[2] The circuit court's determination of the "assets which ought to be subjected to the claim," MCL 800.404(3), is guided by the definition of "assets" set forth in the SCFRA, MCL 800.401a(a), which excludes from consideration a prisoner's homestead up to $50,000 in value and money saved by the prisoner from wages and bonuses paid while incarcerated.

In this case, defendant clearly attempted to avoid his statutory duty and frustrate the state's statutory right to partial reimbursement for his incarceration costs by attempting to disclaim his interest in the insurance proceeds. However, we conclude that the SCFRA barred defendant from disclaiming his interest. First, we note that the Legislature's primary intent would be ignored, and clearly frustrated, if prisoners were permitted to disclaim their interest in assets to which they are, or become, entitled in a dual effort to circumvent their statutory duty and deprive the state of its statutory right. As this Court noted in *Sheko*, 218 Mich App at 189, "a prisoner cannot impede the state's clear statutory right to reimbursement . . . ."

Second, the SCFRA specifically recognizes certain rights and obligations with regard to prisoner assets, but the purported right to disclaim an interest in a potential asset is not recognized. And the fact that MCL

---

[2] See MCL 800.401a(a), 800.403(2), 800.404(1), 800.404(3), and 800.404(5).

800.404a(1) allows the attorney general to "use any remedy, interim order, or enforcement procedure allowed by law or court rule" to prevent a prisoner from disposing of assets suggests a legislative intent to bar a prisoner from alienating his or her ownership interest in any assets that might be subject to confiscation. Similarly, the authority conferred on the circuit court by MCL 800.404a(2) to appoint a receiver to protect and maintain the assets pending resolution of the action also suggests a legislative intent to bar a prisoner from alienating his or her ownership interest in assets that might be subject to confiscation.

Third, the SCFRA's definition of an "asset" includes property "belonging to or due a prisoner . . . ." MCL 800.401a(a). Thus, the state's right to seek reimbursement through a prisoner's assets does not depend on whether the prisoner accepted or received the particular asset sought by the state—it need only be "due a prisoner." Under the DPIL, the legal effect of a disclaimer is that the disclaimant is treated as never having accepted or received the disclaimed interest. MCL 700.2909(2). However, under the SCFRA acceptance and receipt of the asset is irrelevant; again, the property must merely be due a prisoner. In this case, once defendant's mother died, defendant was "due" the insurance proceeds. See *Aetna Life Ins Co v Owens*, 318 Mich 129, 138-139; 27 NW2d 607 (1947); *Dogariu v Dogariu*, 306 Mich 392, 406; 11 NW2d 1 (1943). Accordingly, there is no conflict between the SCFRA and the DPIL.

Fourth, in *Sheko*, 218 Mich App at 188-189, this Court rejected a similar attempt by a prisoner to avoid his statutory duty to reimburse the state for incarceration costs under the SCFRA. In that case, the prisoner sought to repay a debt owed to his brother with proceeds from a lawsuit settlement and

opposed the state's efforts to recover those proceeds pursuant to the SCFRA. *Id.* at 186-187. The prisoner argued that his common-law right to prefer creditors was violated by the state's action. *Id.* at 187. This Court rejected the argument, noting that even if the defendant had such a common-law right to prefer creditors, "no such right exists in an action brought under the SCFRA." *Id.* at 188. And "[a]ccepting defendant's position would lead to the absurd result of the state receiving reimbursement only when a prisoner has no other financial obligations, or having other financial obligations, does not object to the state securing reimbursement from the prisoner's assets." *Id.* In the case before us, defendant objected to the state's action by asserting a purported right to disclaim his interest in the insurance proceeds. Defendant opposed the state's action for, ultimately, the same reasons rejected in *Sheko*—to avoid his statutory duty of reimbursement and to deny the state its statutory right to reimbursement. Permitting a prisoner to use the DPIL to accomplish these objectives would similarly lead to an absurd result.

In summary, the SCFRA bars a prisoner from disclaiming an interest in assets pursuant to the DPIL. Defendant had no right to disclaim his interest in the insurance proceeds; thus, the circuit court reached the correct result albeit for the wrong reason. See *Hess v Cannon Twp*, 265 Mich App 582, 596; 696 NW2d 742 (2005). In light of our resolution of this dispositive issue, we need not consider defendant's other issue on appeal pertaining to whether his purported disclaimer was barred under the DPIL.

Affirmed.

RONAYNE KRAUSE, P.J., and CAVANAGH and JANSEN, JJ., concurred.