# STATE OF MICHIGAN

# COURT OF APPEALS

WILLIAM BECKWITH,

Plaintiff-Appellant,

and

JOHN CORRION and JAMES DAYSON,

Plaintiff,

v

STATE TREASURER,

Defendant-Appellee.

UNPUBLISHED
February 18, 2016

No. 323990
Ingham Circuit Court
LC No. 14-000593-AW

Before: HOEKSTRA, P.J., and METER and M. J. KELLY, JJ.

PER CURIAM.

Plaintiff, William Beckwith, appeals by right the trial court's order granting summary disposition in favor of defendant, State Treasurer. Because the trial court did not err when it granted the State Treasurer's motion for summary disposition, we affirm.

Beckwith was imprisoned in 2008. In 2009, the State Treasurer learned that Beckwith had assets that might be subject to seizure under the state correctional facility reimbursement act (the Reimbursement Act), see MCL 800.401 *et seq.*, including bank accounts and a certificate of deposit. Beckwith's assets totaled $130,000. The State Treasurer sued to obtain 90 percent of these assets. According to the State Treasurer, William J. Beckwith and Stanley Bogus were "joint signers" on the CD and "named parties" in the case. Both alleged that they were owed money out of Beckwith's CD. The State Treasurer alleged that Beckwith was served with a copy of the complaint and that he sent correspondence regarding that case. Beckwith, however, claimed that he "was not allowed to participate in any way, shape or form." He alleges that he sent two letters to the trial court asking "to be present or have legal representation" but received no response. According to the State Treasurer, it eventually agreed to accept approximately 60 percent of the assets. William J. Beckwith and Bogus also received portions of the CD.

Thereafter, Beckwith sued the State Treasurer and asked the trial court to issue a writ of mandamus. He alleged that the appropriation of his assets was improper because he was entitled to keep 10 percent of his assets under MCL 800.403(3), and because the trial court neglected to

-1-

consider the needs of his dependents, as required under MCL 800.404(5). The State Treasurer moved for summary disposition, arguing that Beckwith's suit was barred by res judicata and that he had failed to identify a legal duty that would make a writ of mandamus appropriate. The trial court agreed with both arguments and granted the State Treasurer's motion.

Beckwith then appealed the trial court's order in this Court.

We review de novo a trial court's decision on a motion for summary disposition. *Tenneco Inc v Amerisure Mut Ins Co*, 281 Mich App 429, 443; 761 NW2d 846 (2008). We also review de novo the trial court's interpretation and application of a statute. *State Treasurer v Snyder*, 294 Mich App 641, 645; 823 NW2d 284 (2011).

With the Reimbursement Act, the Legislature imposed "a civil, statutory duty on prisoners to reimburse the state for the cost of their incarceration." *Id*. The act "grants the state a statutory right to reimbursement of up to 90 percent of the value of a prisoner's assets." *Id*. To effect this right, the state may file "a complaint in the circuit court to secure reimbursement, from the assets of a prisoner, for the expenses incurred by the state for the cost of care of the prisoner during the entire period of his incarceration." *Id*. (internal quotation marks and citation omitted). "Assets" include "property, tangible or intangible, real or personal, belonging to or due a prisoner or former prisoner including income or payments to such prisoner from social security, worker's compensation, veteran's compensation, pension benefits, previously earned salary or wages, bonuses, annuities, retirement benefits, or from any other source whatsoever . . . ." MCL 800.401a(a).

Beckwith first argues that he was statutorily entitled to retain 10 percent of his assets. MCL 800.403(3) provides that "[n]ot more than 90% of the value of the assets of the prisoner may be used for purposes of securing costs and reimbursement under" the Reimbursement Act. The court in the previous case distributed $129,000 of the $130,000 in assets; the state received approximately 61.5 percent of the $130,000, and William J. Beckwith and Bogus received 34.6 and 3.1 percent, respectively. The crux of Beckwith's argument is that, because the state cannot recoup more than 90 percent, it must follow that the prisoner is entitled to retain 10 percent, which did not occur in his case.

In interpreting statutes, this Court's goal "is to ascertain and effectuate legislative intent." *Michigan Ed Ass'n v Secretary of State*, 489 Mich 194, 217; 801 NW2d 35 (2011). In doing so, we must first look to the language employed in the statute. *United States Fidelity Ins & Guaranty Co v Mich Catastrophic Claims Ass'n (On Rehearing)*, 484 Mich 1, 13; 795 NW2d 101 (2009). "Because the Legislature is presumed to have intended the meaning it plainly expressed, the fair and natural import of the terms employed, in view of the subject matter of the law, governs." *Hughes v Region VII Area Agency on Aging*, 277 Mich App 268, 274; 744 NW2d 10 (2007) (internal quotation marks, alteration, and citations omitted).

Beckwith's contention that he was entitled to keep 10 percent of his assets is without merit. The statute states only that the state is entitled to *no more* than 90 percent of a prisoner's assets. It establishes a ceiling, not a floor. And that ceiling covers only the state. The statute does not insulate a prisoner's assets from his creditors, such as William J. Beckwith and Bogus.

Consequently, because the state took less than the permissible amount, there was no statutory violation.

Citing MCL 800.404(5), Beckwith also argues that because the court in the 2009 case failed to consider the needs of his dependents, he is entitled to a writ of mandamus and damages. We review for an abuse of discretion a trial court's decision on a request for mandamus. *Coal for a Safer Detroit v Detroit City Clerk*, 295 Mich App 362, 367; 820 NW2d 208 (2012). However, whether the elements required for issuance of a writ of mandamus are present is a question of law, which we review de novo. *Id*.

"Mandamus is an extraordinary remedy and the primary purpose of a writ of mandamus is to enforce duties required by law." *Stand Up v Secretary of State*, 492 Mich 588, 618; 822 NW2d 159 (2012). To obtain a writ of mandamus, the plaintiff bears the burden of establishing that he or she "has a clear legal right to the performance of the duty sought to be compelled," the defendant "has a clear legal duty to perform" the act, "the act is ministerial in nature," and "the plaintiff has no other adequate legal or equitable remedy." *Barrow v City of Detroit Election Comm*, 301 Mich App 404, 412; 836 NW2d 498 (2013).

MCL 800.404(5) states that before the circuit court can order reimbursement, it must "take into consideration any legal obligation of the defendant to support a spouse, minor children, or other dependents and any moral obligation to support dependents to whom the defendant is providing or has in fact provided support." The statute plainly imposes a burden on the circuit court, not the state. Because the statute does not impose a duty on the State Treasurer, Beckwith has not established an essential element of his claim. *Barrow*, 301 Mich App at 412. Consequently, the trial court did not err when it determined that Beckwith was not entitled to a writ of mandamus as a matter of law and dismissed his claim. Given our resolution of these issues, we decline to address whether res judicata was applicable.

Affirmed.

/s/ Joel P. Hoekstra
/s/ Patrick M. Meter
/s/ Michael J. Kelly

-3-