# STATE OF MICHIGAN

# COURT OF APPEALS

STATE TREASURER,

   Plaintiff-Appellant,

v

MATTHEW I. CHAUNCEY, #811327,

   Defendant-Appellee.

UNPUBLISHED
July 21, 2016

No. 326723
Genesee Circuit Court
LC No. 14-103535-CZ

Before: SHAPIRO, P.J., and HOEKSTRA and RONAYNE KRAUSE, JJ.

PER CURIAM.

The present case is an action for reimbursement under the State Correctional Facility Reimbursement Act (SCFRA), MCL 800.401 *et seq.* The trial court initially entered an award in favor of plaintiff, the State Treasurer ("the state"), concluding that the state was entitled to 90% of $8,062.52 in life insurance proceeds received by defendant. However, the trial court later granted defendant's motion for reconsideration and entered a new order, awarding one-third of the life insurance proceeds to each of defendant's two sisters and reducing the state's portion to 90% of defendant's remaining one-third of the funds. The state now appeals as of right. Because the trial court erred by awarding a portion of the life insurance proceeds to defendant's sisters and the state is entitled to 90% of the full value of the policy, we reverse.

Defendant is an inmate in a Michigan prison, and this case arises from a dispute over funds deposited into defendant's prison account. In particular, defendant's grandmother, Irmtraud Dishner, named defendant as the sole beneficiary of a life insurance policy. Following her death, a check totaling $8,062.52 was issued to defendant and deposited into his prison account in September of 2014.

Thereafter, the state filed a complaint under the SCFRA, seeking 90% of the life insurance proceeds as reimbursement for defendant's cost of care during his incarceration. Although he was provided with notice, defendant did not appear at the show cause hearing. However, the state summarized defendant's argument on the record at the show cause hearing, explaining that defendant claimed "the check was death benefits from the death of his grandmother, and that that check was to be split three ways." On November 10, 2014, the trial court entered an order in favor of the state, concluding that the state was entitled to receive 90% of the life insurance proceeds pursuant to MCL 800.403(3).

-1-

After entry of the trial court's order, defendant filed an untimely written response to the state's complaint and defendant filed a motion for reconsideration. In his untimely response, defendant conceded that he was the beneficiary of Dishner's life insurance policy. However, defendant maintained that Dishner told him "that the money was to be split three ways and that defendant was to give 1/3 to each of his sisters." Defendant asserted that Dishner's promise amounted to an oral contract, and defendant asked the court to "take into consideration any legal or moral obligation" that defendant had in regards to the life insurance proceeds. Ultimately, defendant asked that the court "award the State of Michigan 90% of defendant's 1/3 share of the death benefit." Similarly, in his motion for reconsideration, defendant asserted that the insurance proceeds should be split three ways between defendant and his sisters, and he claimed that this assertion could be supported by evidence from his mother and sisters. Defendant also challenged the propriety of the previous proceedings because he was absent from the show cause hearing, he had not been called on the phone to participate, and the court failed to consider letters written by defendant's mother and sisters before ruling on the state's request for reimbursement.

On December 9, 2014, the trial court entered an order granting defendant's motion for reconsideration and ordering a hearing on the insurance proceeds. At the hearing on February 23, 2015, defendant presented his own testimony as well as testimony from his mother and one of his sisters. From this hearing, it appears undisputed that Dishner named defendant as the sole beneficiary of her life insurance policy through MetLife. Dishner obtained this policy before defendant's incarceration, which occurred in 2011; and, before her death, Dishner made no efforts to change the named beneficiary on the policy through MetLife.

Nonetheless, defendant and his family members maintained that Dishner intended the money to be split equally between defendant and his two sisters. In this regard, defendant testified that Dishner "told [him] before her death that if anything ever happened to her that the money be split three ways, between me and my two sisters." Defendant's mother testified that in September of 2013, a couple of weeks before Dishner had a stroke, Dishner said that "she would like this money split with the grandkids . . . and . . . she had [defendant] put the head of it." According to defendant's mother, Dishner wanted defendant's sisters to share in the proceeds, but she "didn't know how to do it, switch [it] over to where the other girls would have it too." Defendant's sister had no personal knowledge of Dishner's intentions, but testified that she had been told, by defendant and their mother, that Dishner intended for the insurance proceeds to be split between defendant and his two sisters.

At the close of the hearing, the trial court stated that it was "going to exercise its discretion and its equitable powers and order that the policy . . . be split three ways." Consistent with this oral pronouncement, the trial court entered a new order awarding $2,687.51 to each of defendant's sisters. The trial court also awarded $2,418.75 to the state, which represented 90% of defendant's one-third share in the proceeds. The remaining funds were remitted to defendant. Following the trial court's decision, the state now appeals to this Court as of right.

On appeal, the state first argues that the trial court abused its discretion by granting defendant's motion for reconsideration because, insofar as defendant argued that the insurance proceeds should be split three ways, defendant's motion for reconsideration merely presented issues that had been previously decided by the trial court at the initial show cause hearing. The state also notes that defendant's motion for reconsideration involved assertions that defendant

did not participate in the show cause hearing and that his family members sent letters which the court failed to consider. However, according to the state, these assertions did not amount to a palpable error by which the trial court had been misled, and thus the trial court abused its discretion by granting defendant's motion for reconsideration.

This Court reviews for an abuse of discretion a trial court's decision on a motion for reconsideration. *Churchman v Rickerson*, 240 Mich App 223, 233; 611 NW2d 333 (2000). "An abuse of discretion occurs if the trial court's decision falls outside the range of principled outcomes." *Macomb Co Dep't of Human Servs v Anderson*, 304 Mich App 750, 754; 849 NW2d 408 (2014).

In this case, contrary to the state's arguments, the trial court's decision to revisit whether the life insurance proceeds constituted assets due solely to defendant was within the trial court's discretion. In particular, trial courts have discretion to reconsider prior rulings under MCR 2.119(F)(3), which states:

> (3) Generally, and without restricting the discretion of the court, a motion for rehearing or reconsideration which merely presents the same issues ruled on by the court, either expressly or by reasonable implication, will not be granted. The moving party must demonstrate a palpable error by which the court and the parties have been misled and show that a different disposition of the motion must result from correction of the error.

"The plain language of the court rule does not categorically prohibit a trial court from granting a motion for reconsideration even if the motion presents the same issues initially argued and decided." *In re Estate of Moukalled*, 269 Mich App 708, 714; 714 NW2d 400 (2006). Instead, "[MCR 2.119(F)] allows the court considerable discretion in granting reconsideration to correct mistakes, to preserve judicial economy, and to minimize costs to the parties." *Al-Maliki v LaGrant*, 286 Mich App 483, 486; 781 NW2d 853 (2009) (quotation omitted). Indeed, even when the motion for reconsideration presents "nothing new," the trial court has the discretion to give a litigant a 'second chance.'" *Yoost v Caspari*, 295 Mich App 209, 220; 813 NW2d 783 (2012) (citation omitted). In light of the trial court's discretion to revisit prior decisions, even if defendant's absence from the show cause hearing and his complaints regarding letters from his family members did not constitute palpable error, we cannot conclude that the trial court abused its discretion by affording defendant a second chance to present his assertions that a portion of the life insurance proceeds rightfully belonged to his sisters. The state's argument in this respect is without merit.

Nonetheless, we agree with the state that the trial court erred by exercising its equitable and discretionary powers to award defendant's sisters a share in the life insurance proceeds. In this regard, the state argues that, as a matter of law, the life insurance proceeds belonged exclusively to defendant as the sole beneficiary of Dishner's policy and, recognizing that life insurance proceeds are an "asset" within the meaning of the SCFRA, the state argues that the state is entitled to a 90% share of the proceeds. According to the state, defendant may not elect to pay family members before reimbursing the state and, because his sisters are not his dependents, he cannot claim a moral or legal obligation to his sisters that would usurp the state's entitlement to his assets under the SCFRA. We agree.

We review the interpretation and application of statutes de novo as a question of law. *Anderson v Myers*, 268 Mich App 713, 714; 709 NW2d 171 (2005). When engaging in statutory interpretation, we begin with the statute's language and, "[i]f the language is clear and unambiguous, we assume the Legislature intended its plain meaning, and the statute is enforced as written." *Kik v Sbraccia*, 272 Mich App 388, 392; 726 NW2d 450 (2006). The legal effect of a contractual provision also presents a question of law, which we review de novo. *Fuller v GEICO Indem Co*, 309 Mich App 495, 498; 872 NW2d 504 (2015).

The SCFRA was enacted to ensure that prisoners bear the burden of the cost of their incarceration, to the extent possible, rather than taxpayers. *State Treasurer v Schuster*, 456 Mich 408, 413; 572 NW2d 628 (1998). Under the SCFRA, prisoners have a duty to reimburse the state for the cost of their incarceration, and the state has a statutory right to secure reimbursement from a prisoner's "assets." *State Treasurer v Snyder*, 294 Mich App 641, 645; 823 NW2d 284 (2011), citing MCL 800.403(3). With two exceptions not relevant to this case, the SCFRA defines "assets" as "property, tangible or intangible, real or personal, belonging to or due a prisoner . . . including income or payments to such prisoner . . . from any other source whatsoever . . . ." MCL 800.401a(a). Under this broad definition, "proceeds a prisoner is due from a life insurance policy are considered an asset for purposes of the SCFRA." *Snyder*, 294 Mich App at 645.

By statute, the state is entitled to receive up to 90% of the value of a prisoner's assets. *Id.*; MCL 800.403(3). However, the court can award the state less than 90% of a prisoner's assets "after considering a prisoner's legal obligations to support a spouse and minor children and moral obligations to support dependents." *Schuster*, 456 Mich at 421 n 4. See also MCL 800.404(5). Although the trial court may consider these moral and legal obligations to dependents, the fact remains that "a prisoner cannot impede the state's clear statutory right to reimbursement by claiming that he would prefer to use his assets to pay the obligation of his choice." *State Treasurer v Sheko*, 218 Mich App 185, 189; 553 NW2d 654 (1996).

In the present case, the funds in dispute are proceeds from a life insurance policy, which constitutes an "asset" within the meaning of the SCFRA. *Snyder*, 294 Mich App at 645. The undisputed facts demonstrate that defendant was named as the sole beneficiary of Dishner's policy. As the sole beneficiary of the policy, once Dishner passed away, defendant was legally due the insurance proceeds and those assets thus became subject to the SCFRA. See *id.* at 649.

In contrast, defendant contends that all of the insurance proceeds cannot be considered "assets" within the meaning of MCL 800.401a(a) because the proceeds were not exclusively his, as Dishner intended the proceeds to be split three ways. However, even accepting as true the assertion that Dishner wanted to include defendant's sisters as beneficiaries, the policy for insurance was between Dishner and MetLife, and the undisputed evidence indicates that Dishner did not change the insurance policy to include defendant's sisters. Indeed, Dishner had the policy for several years, yet there is no evidence that she took, or even attempted to take, any positive steps to change her policy to include defendant's sisters as beneficiaries. Cf. *Aetna Life Ins Co v Brooks*, 96 Mich App 310, 316; 292 NW2d 532 (1980) (finding change in distribution had been effected by insured's "substantial compliance" with policy's terms for changing named beneficiary). Absent such evidence, Dishner's unexercised desire to include her granddaughters as beneficiaries did not modify her insurance policy with MetLife. See *Aetna Life Ins Co v*

-4-

*Mallory*, 291 Mich 701, 706; 289 NW 302 (1939) ("An unexecuted intention of the insured to change a beneficiary will not be sufficient."). Instead, defendant remained the sole beneficiary and the proceeds became due solely to defendant upon Dishner's death. See *Dogariu v Dogariu*, 306 Mich 392, 406; 11 NW2d 1 (1943) ("No change of beneficiary having been accomplished prior to the death of the insured, the right of the plaintiff (beneficiary) to the proceeds became vested at her death." (citation omitted)). In short, as a matter of law, all of the life insurance proceeds were due solely to defendant at the time of Dishner's death and thus *all* of the proceeds constituted an asset subject to the SCFRA. See *Snyder*, 294 Mich App at 649.

We note that, although defendant's sisters were not beneficiaries of Dishner's policy, defendant nonetheless claimed he was under some type of obligation to share the insurance proceeds with his sisters. But, even assuming that defendant felt such an obligation, the SCFRA does not allow defendant to choose to honor such familial obligations in lieu of reimbursing the state, *Sheko*, 218 Mich App at 189; nor does the SCFRA afford the trial court discretion to consider defendant's moral, or even legal, obligations to his sisters. As noted, the SCFRA allows courts to consider a prisoner's obligation to support a spouse, minor children, and dependents. MCL 800.404(5). There is no suggestion that defendant's sisters are his dependents, and the SCFRA makes no specific provision for siblings. Consequently, the trial court was without authority to negate the state's statutory right to reimbursement by awarding a portion of defendant's assets to defendant's sisters. Instead, because the proceeds were defendant's assets, the state was entitled to 90% of the funds. See MCL 800.401a(a); MCL 800.403(3).

Reversed and remanded for entry of an order consistent with this opinion. We do not retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ Joel P. Hoekstra
/s/ Amy Ronayne Krause